TAYLOR *et al.*, Respondents, *v.* BROWN *et al.*, Appellants.

**1. Indians—Conveyances of—Restraints on Alienation—Notice.**

Lands acquired by Indians that would abandon their tribal relations, under 18 U. S. St. 420, were declared to be inalienable for five years. Such an Indian, having received a patent, which was in the usual form, without any reference to the statutory disability, or his being an Indian, executed a conveyance, within the five years, to B. *Held*, that the statute prevailed over the recitals of the patent, that purchasers must take notice thereof, and that the conveyance was void.

**2. Same—Adverse Possession—Good Faith—Color of Title—Sufficiency.**

Under such deed, where the grantee knew his grantor was an Indian, there was no such good faith and color of title as is required for an adverse possession to defeat a subsequent conveyance.

**3. Time—Computation.**

By an act of congress, 18 U. S. St. 420, under which a patent issued to an Indian, on the 15th day of June, 1880, it was declared the land should be inalienable for "five years from the date of the patent." *Held*, in computing the time, that the first day should be included, and that a conveyance made on the 15th of June, 1885, was not within the limitation, and therefore valid.

**4. Same—Construction—Rule as to First Day.**

In such cases there is no absolute rule of computation. "From" in its literal and restricted sense means "exclusive," but it may be used in a connection that means "inclusive;" and to prevent forfeitures. uphold *bona fide* transactions, and carry out the intention of parties, courts will always regard it as so used.

(Argued May 19, 1888; reversed May 25; opinion filed October 10, 1888.)

Appeal from the district court of Moody county; Hon. C. S. PALMER, Judge.

*Gamble Bros.* and *J. H. Eno*, for appellants.

As to the expiration of the limitation of the statute.

If it be claimed, as it is, that West was affected by the disabilities of the statute, outside of the terms of the patent, it would certainly follow that he was affected by its terms, and the limitation operated, on the 15th day of June, 1880, the date of

the issue of the patent to him.   The title vested in him by the execution and record of the patent; it was not necessary that there should be any delivery to him.   *U. S.* v. *Schurz,* 103 U. S. 378.

If, then, the limitations of the statute prevail over the absolute recitals of the grant, then West could not have executed a legal transfer of the property upon June 15, 1880.

It is a rule of computation that fractions of a day are to be disregarded in computations which include more than one day, and involve no questions of priority.   Civil Code, § 2123.   West, then, must have been affected by the limitation of the statute for the whole of the day of June 15, 1880.   In other words, the limitation and disability commenced to operate at the first minute of time of June 15, 1880, and would expire the last minute of June 14, 1885.

There is no rule laid down by the Civil Code to guide us.   The only suggestion that we can gain from it is in the case of minors completing the period of minority, and in that case it follows the rule above indicated.   Section 10.

That the day the patent issued should be included in the computation under the act of congress, and the facts presented, see *Pugh* v. *Duke of Leeds,* 2 Cowp. 714; *Glassington* v. *Rawlins,* 3 East, 407; *Arnold* v. *U. S.,* 9 Cr. 119; *Gupert* v. *Bogart,* 18 How. 158; *Sheets* v. *Selden,* 2 Wall. 177; *Dutcher* v. *Wright,* 94 U. S. 553; *Price* v. *Whiteman,* 8 Cal. 412; *Lysle* v. *Williams,* 15 Serg. & R. 135; *Wright* v. *Forrestal,* 65 Wis. 341, 27 N. W. Rep. 52.

There is no unvarying rule of construction as to whether the day shall be inclusive or exclusive, and in applying the doctrine to be deduced from conflicting cases to a *quasi* forfeiture, as this is, a court of equity should lean against a construction which favors forfeiture.   *Taylor* v. *Mosher,* 5 C. E. Greene, 262.

In further support of this doctrine, see Dwarris, Statutes, 277, 278; Taylor's Land. & Ten. § 78; 4 Kent's Com. 97; *Pratt* v. *Brackett,* 20 Kan. 200; *Anglesbarger* v. *Slapp,* 91 Ind. 311; *Kerr* v. *Heverstok,* 94 Ind. 178.

As to the patent being absolute on its face.

The parties to the patent, on the one hand, are the government, the grantor, and West, the patentee, who, under the treaty, upon the receipt of the patent, became a citizen of the United States, and entitled to all the privileges and immunities as such citizen. With such rights and immunities certainly would be included the right of ownership in property, and the power of alienation.

Here, then, is a patent, regular on its face, issued and delivered by the government to a citizen of that government, and it would seem to appellants that a party purchasing the land included in the patent would not be called upon by any rule of good faith or law of notice to go further than the terms of the patent itself. He was dealing with a citizen, like himself, of the same government. The patent, in all respects regular, disclosed to him that its terms were absolute; that it granted to West and to his heirs and assigns the said land, with an *habendum* "to have and to hold the said land forever." What was the purchaser to understand by "assigns?" It would certainly repeal any inference of limitation as to the power of the patentee in the disposal of the property included in the grant.

As to the effect of a patent, and its conclusiveness on all parties. The supreme court at a very early day, in the case of *Bagnell* v. *Brodwick*, 13 Pet. 450, decided that "congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government in reference to the public lands declares the patent the superior and conclusive evidence of legal title. Until its issuance, the fee is in the government, which, by the patent, passes to the grantee." See, also, *Gibson* v. *Choteau*, 13 Wall. 102; *Wilson* v. *Hall*, 6 Wall. 83; *Beard* v. *Federy*, 3 Wall. 492; *Smelting Co.* v. *Kemp*, 104 U. S. 640, 647; *Steele* v. *Smelting Co.*, 106 U. S. 450–452, 1 Sup. Ct. Rep. 389; *Maxwell Land Grant Case*, 121 U. S. 380, 7 Sup. Ct. Rep. 1015; *Moore* v. *Wilkinson*, 13 Cal. 487, 488; *Johnson* v. *Tousley*, 13 Wall. 72, 83; *Moore* v. *Robbins*, 96 U. S. 530; *Goodell* v. *Jackson*, 20 Johns. 695.

The deeds from West to Thayer, dated June 17, 1885, and from Thayer to plaintiffs, are void, under section 681, C. C. See same provision, section 147, c. 1, on Real Property, p. 2196, N. Y. Rev. St., and numerous cases cited.

It seems to us that on the uncontradicted evidence and the facts found it is conclusive that these deeds under which appellants claim are void as against defendants, even when the court omitted to find that the adverse possession was in good faith for the alleged ground that the possession was founded on void instruments, or upon any other ground. Sections 46, 48, C. C. Pro.; *Hasbrouk* v. *Bunce,* 62 N. Y. 482; *Hamilton* v. *Wright,* 37 N. Y. 502, 506; *Forman* v. *Peterson,* 111 Mass. 148, 151; *Edgerton* v. *Bird,* 6 Wis. 512; *McMohan* v. *Bowe,* 114 Mass. 140, 144; 2 Blackstone, (Cooley's,) 290, and note; *Livingston* v. *Proseus,* 2 Hill, 526; *Livingston* v. *Peru Iron Co.,* 9 Wend. 516.

The court, having found the facts showing adverse possession, in order to destroy the effect of these findings must have found under the law, as stated in the last case cited, that the possession was in bad faith, or obtained by fraud. This is as far as the *Peru Iron Case* goes.

No fraud or bad faith is alleged or proved, and the findings on this point are all with appellants.

The statute, both the C. C. and C. Pro., does not include the words "good faith;" and when the court finds the adverse possession as full as a good pleading, and as full as the language of the statute, it is sufficient, and entitles the appellants to a judgment declaring the deeds void under which respondents claim. Besides, the law presumes that all men act in good faith until the contrary is shown, and, in the absence of evidence, good faith and color of title under a deed is presumed, and the court will hold the title was acquired in good faith unless the contrary appears. *Brooks* v. *Bruyn,* 35 Ill. 392; *McCagg* v. *Heacock,* 42 Ill. 157; *Morrison* v. *Morman,* 47 Ill. 477.

We concede the doctrine that a conveyance void on its face is not sufficient to make out a color of title. The same rule

applies to a claim under a deed obtained by fraud or forgery. "Color of title," contrary to the finding in this case, "is that which in appearance is title, but which in reality is not title;" and a claim to property under a conveyance, however incompetent the grantor may have been to convey, is a claim under color of title, and supports adverse possession. 2 Wait, A. & D. 17; *Edgerton* v. *Reed*, 6 Wis. 527; *Brooks* v. *Bryn*, 35 Ill. 392; 1 Bouvier, 335; 3 Wash. Real Pro. (3d Ed.) 138.

*C. H. Winsor*, for respondents.

That the prohibition of the statute attached to the patent is no longer an open question, see *Jackson* v. *Wood*, 7 John. 290; 15 John. 264; *St. Regis Indians* v. *Drum*, 19 John. 127; *Jackson* v. *Goodell*, 20 John. 188, Id. 693; *Lee* v. *Glover*, 8 Cow. 189.

The deed to Young on the 15th day of June, 1885, was within the prohibition. "In the interpretation of a statute, when an act is to be performed within a specified period from or after a day named, the general current of modern authorities as to the computation of time is to exclude the day thus designated, and include the last day of the specified period." *Sheets* v. *Shelden*, 2 Wall. 190; *Best* v. *Polk*, 18 Wall. 119; 4 Scam. 420; 28 Ill. 55; 33 Ill. 9. See, also, 3 Denio, 16; 1 Pick. 485; 2 Cow. 518, 605; 6 Cow. 659; 9 Wend. 346; 9 Mich. 154; 6 Mich. 298; 18 How. 158; 94 U. S. 553; 8 Kans. 677; 45 N. H. 39; 24 Kans. 478; 15 Kans. 164; 19 Kans. 221; 16 Iowa, 588; 14 N. W. Rep. 659; 28 Barb. 284; 4 How. Pr. 298; 75 N. Y. 240; 2 Hill, 356; 2 Denio, 164; 10 Barb. 117; 5 Wend. 137; 10 Wend. 424; 4 Wash. C. C. 232; 1 Cal. 254; 25 Cal. 122; 67 Wis. 154; 23 Ind. 48; 12 N. J. Law, 203; 12 N. J. Eq. 261; 29 N. J. Eq. 571; 2 Cow. 69; 19 Cow. 376; 37 Kan. 480; 9 N. H. 304.

That the deed was void is needless to say. The statute makes it so.' *Kansas Indian Cases*, 5 Wall. 737; *Smith* v. *Stevens*, 10 Wall. 321; 2 Kans. 238; *Clark* v. *Libby*, 14 Kans. 435; *Furrington* v. *Wilson*, 29 Wis. 383.

No adverse possession can be founded upon a possession un-

der a deed obtained by fraud, or where there is an express pro-
hibition of alienation, so that the deed is absolutely void.   *Gib-
son* v. *Choteau*, 13 Wall. 99; Organic Act, sections 1839, 1840,
1851; *Irvine* v. *Marshall*, 20 How. 558; *Livingston* v. *The Peru
Iron Co.*, 9 Wend. 511, 22 N. Y. 170.

THOMAS, J.   This action was brought by the respondents
against the appellants and others, in the district court of Moody
county, for the purpose of removing alleged clouds upon their
titles to certain real estate described in the complaint, by rea-
son of alleged deeds of conveyance of the same lands to the ap-
pellants, which they allege to be illegal and void, and ask that
they be so adjudged by the court.

The appellants, Alfred Brown and Timothy Young, were the
only defendants served with process, and they served and filed
separate answers, in which they set up their said titles to said
real estate; and by way of counter-claims prayed that their titles
be quieted, and that respondents' pretended claim to said lands
be adjudged null and void.

The district court, after hearing the case, rendered judgment
in favor of respondents.   Appellants each moved the court for
a new trial, which was refused, and they separately appeal to
this court.

The facts as they appear from the findings of the district court,
are substantially as follows:  On the 15th day of June, 1880, one
Thomas K. West, a Santee Sioux Indian became the owner of
the lands described in the pleadings by a patent from the United
States.   The said West, being an Indian, received his title un-
der the provisions of the statute of the United States giving cer-
tain Indians who should abandon their tribal relations the right
to enter and hold lands under the homestead law.

The statute above referred to contains the following proviso:
"Provided, however, that the title to lands acquired by any In-
dian by virtue hereof shall not be subject to alienation or incum-
brance, either by voluntary conveyance, or the judgment, de-
cree, or order of any court, and shall be and remain inalienable

for the period of five years from the day of the date of the patent therefor." 18 U. S. St. at Large, 420.

The appellants herein received deeds of conveyance from said West for three 40-acre tracts of said land some time in the year 1881. Appellant Timothy Young took a new deed from said West for the entire 160 acres, on the 15th day of June, 1885. On the 17th day of June, 1885, said West also conveyed by deed said entire tract of land to' one Thayer, who on the 19th day of the same month conveyed it to the respondents. These deeds were all regular as to form, and were duly recorded in the order of their respective dates.

The main question, therefore, presented in this case, is, who is the owner of the lands in controversy? The appellants appealed separately from the judgment of the district court, which made separate findings as to them, both of whom assign a long and numerous list of alleged errors, the most of which we do not deem it necessary to consider in detail, as there are only two or three points seriously relied on by appellants to reverse the judgment of the district court.

It is contended on behalf of both the appellants that the district court erred in holding that their deeds from West, received by them in the year 1881, were void, for the reasons:

*First,* the patent to said West from the United States was absolute on its face, and conveyed to him a title in fee.

*Second,* the court erred in deciding that the deeds to Thayer, and from him to respondents, were valid, because of the adverse possession of Brown as against them. The question of the adverse possession of Brown as against Young is not raised.

In case this court should sustain the views of the district court on these points, appellant Timothy Young insists that the district court erred as a matter of law in holding that his deed of June 15, 1885, was executed within the five years from the date of the patent, and for that reason void.

It will be observed that the appellants, while taking separate appeals, are really hunting in couples, so far as this case is concerned; and therefore they make no point as to the rights of

each other, but are content if either shall succeed in obtaining judgment for the lands. Brown does not controvert the position of Young, but says, through his counsel, that he shall be content with a conclusion in favor of said Young's position, and consents in that event that judgment may be entered as prayed for by said Young.

We shall first consider the two propositions,—one of which involves the validity of deeds to appellants of date 1881; the other, the validity of deeds to respondents' grantor of date the 17th of June, 1885, as affected by the adverse possession of Brown.

The patent issued to West was in the usual form, and made no reference to the fact that he was an Indian, but was absolute on its face, and, so far as could be gathered from its contents, was a conveyance in fee, and, but for the inhibition of the statute heretofore quoted, there could be no question as to the regularity and validity of the deeds to appellants executed in 1881.

It is contended by counsel for appellants, and not without some force, that notwithstanding the limitations sought to be ingrafted on the patent by the statute, none of which were embraced or recited therein, the conveyances should be held to be good and valid, because purchasers were not bound to look *dehors* the terms of the patent, but had the right to rely upon its contents alone in order to discover the extent and scope of said West's title. This proposition, as before intimated, is not without some show of reason, and, if it were a new and original question, we should feel some hesitancy in holding otherwise; but, upon investigation, we find that the courts have frequently had occasion to pass upon this question, and they uniformly, so far as we have been able to discover, hold that statutes similar to the one sought to be invoked herein prevail over recitals of the deed or patent.

It is true it may seem to be a harsh rule that a party about to purchase lands from another cannot rely upon the title of the grantor as disclosed by the record, and perhaps it would have

been safer and less harmful to all parties had the land department seen proper to recite the limitations of the statute in the patent; but the fact that it was not done does not, in our opinion, relieve them from the effect of the law, which they are presumed to know. This law was a general one in regard to Indians in the United States, concerning their power of holding lands, and the parties purchasing of them were chargeable with notice of said law. It is the same as' though the statute had said that no contracts made with the Indians residing in the United States in relation to the sale of lands, without the consent of the president or the secretary of the interior, should be valid; yet we apprehend that it will not be contended that a contract with the Indians not in compliance with such a statute could be enforced.

We do not treat the statute altogether as an attempt to limit the title of the Indian to the lands, but rather as placing upon him a disability which begins with the date of the patent, and continues for the period of five years thereafter. Hence, one dealing with the Indians in the purchase of lands must not only see that he has a good and perfect title of record, but must also see that he is not laboring under any disability which prevents him from making a good and valid deed.

We therefore conclude that it was not within the power of the Indian Thomas K. West to alienate the land in the year 1881, at which time the deeds to appellants were executed, and they therefore obtained no title by reason of these pretended conveyances.

This view of the case is upheld and discussed in the cases of *Jackson* v. *Goodell*, 20 Johns. 188, 693; *Lee* v. *Glover*, 8 Cow. 188; and *St. Regis Indians* v. *Drum*, 19 Johns. 127.

All of these cases passed upon similar questions to the one involved in the construction of the statute under consideration in the case at bar, and involved the power of the Indians residing in the state of New York, who held patents from the people of said state to certain lands, which upon their face purported to convey said lands in fee; yet they all hold unequivocally—including so respectable authority as the learned and renowned

Chancellor KENT—that the laws of the state which provided, in substance, that no Indian residing within the state can make any contract concerning the sale of lands within the state, or otherwise dispose of any such lands, or any interest therein, without the authority or consent of the legislature, must prevail over the recital of the patent, and hold that contracts made by these Indians for the sale of their lands not in compliance with the terms of the statute were null and void; and as these cases, so far as we have been able to discover, have not been modified or overruled by any of the more modern cases, we shall treat them as announcing the law on the subject.

We shall next consider the effect of the adverse possession of Brown upon the validity of the deed to Thayer, and of his grantees, the respondents, which were executed on the 17th and 19th of June, 1885, after the disability of the Indian had ceased to exist.

Adverse possession of land, in order to defeat or avoid a deed made subsequently to another, must be in good faith and under color of title. But can one set up color of title under a deed of conveyance which is absolutely null and void? It is clear that it cannot be done where the possession is under a deed obtained by fraud, and it seems to us equally clear that a void deed cannot initiate or be the foundation of an adverse possession that will defeat a subsequent conveyance of the land.

In the case at bar the appellant Brown came into the possession of the land under a deed that its owner had no power to make, and, as the findings of the district court show, he knew his grantor was an Indian at the time of the transaction; and therefore he is to be held to have known, at least in legal effect, of the disability resting on his grantor at the time of the pretended conveyance, for all persons are presumed to know the law. We cannot, therefore, say that he was in possession in good faith, under color of title. To hold otherwise would defeat the evident intention of the statute, and permit the appellant Brown, with the law staring him in the face, to initiate a species of deed and color of title which would in effect nullify the law,

and defeat the protection sought to be thrown around this Indian by the government, and to abrogate the conditions upon which the government parted with its title to the land.

The statute in question is a part of much similar législation on the part of the United States government since its foundation, which was enacted on the ground that the Indians were wards, and under the tutelage and care of the general government, and that such legislation was necessary to protect them in their property and rights against the superior skill and knowledge, stimulated to its utmost activity by the well-known greed and avarice, of the white man.

Hence, under all these circumstances, and the evident intention of those who enacted the statute, we are of the opinion that the deeds of 1881 were null and void, and the adverse possession of appellant Brown by reason thereof was not in law in good faith, and under such color of title as could defeat or avoid a subsequent conveyance executed after the Indian had been relieved of his disability.

But assuming, for the sake of the argument, that we are wrong in the foregoing conclusions, and that the deed is not void, but voidable only, as in cases of infants, let us look at this aspect of the case, and see what result is reached. The law worked a deprivation of the power of alienation on the part of the Indian for the period of five years, and is therefore somewhat analogous to the *status* of an infant with reference to a similar power.

As a rule, and especially in this territory, deeds of infants are voidable only; so that, if there is no disaffirmance by the infant after he attains his majority, his deed is valid, and title passes. Civil Code, §§ 15, 17; *Hastings* v. *Dollarhide*, 24 Cal. 195; *Irvine* v. *Irvine*, 9 Wall. 617. But the giving of another deed, within a reasonable time after his disability ceases, is clearly a disaffirmance of the deed given during his infancy. 24 Cal., *supra*.

Hence, as the law permits disaffirmance by a subsequent deed which, *ex propria vigore*, makes void the prior deed, therefore the subsequent deed, made after majority, is valid, notwithstanding section 681 of the Civil Code.

If this is not true, we have the anomaly of the law both permitting and forbidding, at one and the same time, the same thing, which is not only inconsistent, but absurd; for if the first voidable deed prevents the second disaffirming deed, then no disaffirmance by an infant in this mode is permitted, though the courts hold otherwise, and the Civil Code of this territory is not *contra*.

In the case at bar the Indian Thomas K. West disaffirmed the deeds of 1881 to Brown by the subsequent deeds made to Young and Thayer, within a day or two after his disability ceased; so we must conclude, even in this aspect of the case, that the adverse possession of Brown was subject to the right of said West to disaffirm his deed to Brown by subsequent deeds, and therefore the adverse possession of Brown could not defeat or avoid them.

We shall now consider what we deem the vital point in this case, which is the question as to the effect and validity of the deed of date the 15th of June, 1885, the fifth anniversary of the date of the patent. It is contended by counsel for respondents that the 15th of June, 1885, was within the period of limitation, and the deed of that date to appellant Young gave him no title to the lands by reason of this fact; that, in the computation of time when an act is to be done, it is a well-settled rule that the first day is to be excluded; and in apparent support of this proposition cites numerous authorities.

It is clear, if this proposition is correct, the deed of that date is invalid; but we cannot agree with counsel for respondents that the rule, as he states it, is well settled; but, on the contrary, the question whether the *terminus a quo* should be excluded or included is a vexed question, and has been for a "time whereof the memory of man runneth not to the contrary," and has harassed and perplexed courts and learned doctors of both the common and civil law from the earliest times down to the present day. It has been very appropriately termed by a distinguished writer of the Roman law the *controversia controversissima*.

It is also insisted in behalf of this contention of respondents that the day *a quo* should be excluded under the provisions of our Code of Civil Procedure, which provides in section 6 that "the time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last is a holiday, and then that is also excluded. But we apprehend this rule, as laid down in the Code of Civil Procedure, only establishes the rule as to matters of practice in this territory, and does not intend to fix the rule concerning matters of a general nature to which it has no relation, and therefore has no bearing on the question under consideration.

It seems, so far as we have been able to discover from quite an extensive rummage and examination of the authorities on the subject, that the courts of both this country and England have excluded and included the *terminus a quo;* doing the one or the other as the context and subject-matter seemed to indicate and justify.

In the case of *Pugh* v. *Duke of Leeds,* Cowp. 714, which seems the leading case in the English courts, and which has remained the proper exposition of this vexed question, and which involved the validity of a lease, and the power reserved in a marriage settlement to one Edwards to make leases, with many restrictions and qualifications; *inter alia,* the following: "That they were not to be in reversion, remainder, or expectancy,"—the question was whether the lease was in possession, and turned upon the question of excluding or including the day of the date of the deed.

The opinion in that case was delivered by that eminent jurist, Lord MANSFIELD,—of whom it can be truthfully said he always walked, as it were, upon the mountain ranges of the law,—in which he used the following language: "I will first consider it as supposing this a new question, and that there never had existed any litigation concerning it. In that light the whole will turn upon a point of construction of the particle 'from.' The power requires no precise form to describe the commencement of the lease; the law, no technical form. All that is required is only enough to show that it is a lease in possession, and not in re-

version; and therefore, if the words used are sufficient for that purpose, the lease will be a good and valid lease. In grammatical strictness, and in the nicest propriety of speech that the English language admits of, the sense of the word 'from' must always depend upon the context and subject-matter, whether it be construed exclusive or inclusive of the *terminus a quo*. While the gentlemen at the bar were arguing this case, a hundred instances and more occurred to me, both in verse and prose, where it is used both inclusively and exclusively. If the parties in the present case had added the word 'inclusive' or 'exclusive,' the matter would have been very clear. If they had said 'from the day of the date, inclusive,' the term would have commenced immediately. If they had said 'from the day of the date, exclusive,' it would have commenced the next day. But let us see whether the context and subject-matter in this case do not show that the construction here should be inclusive as demonstratively as if the word 'inclusive' had been added. This is a lease made under a power. The lease refers to the power, and the power requires that the lease should be a lease in possession. The validity of it depends upon its being in possession, and it is made as a provision for an only daughter. He must therefore have intended to make a good lease. The expression, then, compared with the circumstances, is as strong in this respect, of what his intention was, as if he had said, 'I mean it as a lease in possession,' or 'I mean it shall be so construed.' If it is so construed, the word 'from' must be inclusive.

"This construction is to support the deeds of the parties, and give effect to their intention, and to protect property. The other is a subtlety to overturn property, and defeat the intention of the parties, without answering one good end or purpose whatever.

"To conclude, the grounds of this opinion and judgment which I now deliver is that 'from' may in vulgar use, and even in the strictest propriety of language, mean either inclusive or exclusive; that the parties necessarily understood and used it in that sense, which made their deed effectual."

We have quoted from the case *supra* at considerable length,

for the reason that we deem it a lucid and able exposition of this vexatious question, albeit his lordship may seem at first blush to have labored under great stress of judicial weather; but, in our opinion, he succeeded in severing the Gordian knot with which this question has so long been entangled, but in doing so he had to strip it of its subtleties which seemed to hang around about it, and dissipate the clouds that darkened it by reason of conflicting decisions of the courts, the which he did by letting in the sunlight of reason and common sense.

This case has since been followed in the case of *Glassington* v. *Rawlins*, 3 East, 407, and other English cases, and this doctrine is also upheld in the courts of this country, both federal and state. *Vide Arnold* v. *U. S.*, 9 Cranch, 119; *Griffith* v. *Bogart*, 18 How.158; *Sheets* v. *Selden's Lessee*, 2 Wall.117; *Dutcher* v. *Wright*, 94 U. S. 553; *Price* v. *Whitman*, 8 Cal. 412; *Lysle* v. *Williams*, 15 Serg. & R. 135; *Wright* v. *Forrestal*, 65 Wis. 340, 27 N. W. Rep. 52.

We do not claim that there is a uniformity of decisions of the courts of this country in regard to this question, but we admit that there is somewhat of conflict; but, from a thorough examination of them, we arrive at the following conclusion: That there is no absolute or well-settled rule of computation, but that courts will always adopt that construction which will uphold and enforce, rather than destroy, *bona fide* transactions and titles, and whenever it is necessary to prevent a forfeiture, or to effectuate the clear intention of the parties, the *dies a quo* will be included, otherwise they will be excluded.

We think that the word "from," in its literal and restricted sense, means "exclusive," but it may be used in a connection that means inclusive, and it is quite frequently used in the latter sense; and therefore in construing it courts will take into consideration the context and subject-matter, and construe it to mean either inclusive or exclusive, accordingly as it is influenced by its connection.

Applying the doctrine of the case of *Pugh* v. *Duke of Leeds*, and other cases cited *supra*, to the case at bar, it seems to us

that we are compelled to include the day of the date of the patent to said West, and as a matter of course decide that the 15th day of June, 1885, the day on which he conveyed the land to appellant Young, was not within the period of limitation of the statute, and therefore the deed to said Young of that date was valid.

We might properly arrive at this conclusion by treating the Indian as a minor, and applying the law of this territory in regard to minors, and hold that the disability ceased the day before the fifth anniversary of the date of the patent; but we think that the following conclusion is clearer and irresistible. It was clearly the intention of the statute under which said West obtained the patent to the lands that he should be deprived of the power to alienate it for the period of five years from the date thereof; hence, if we exclude the day of its date in the computation of the time during which he was to be deprived of this power, we place it within his power to defeat the object of the law. Suppose the patent had been issued and delivered to him at 10 o'clock A. M. of the day of its date, what was there to prevent him from alienating the land between that hour and the hour of midnight of that day, or at any time previous to the beginning of the next day, if the *terminus a quo* be excluded? in which event we would have an anomalous, incongruous, not to say absurd, statute, containing within itself seeds the germination of which might defeat its object at the very threshold of its existence; for it is absolutely certain that West could have legally conveyed the land at any time after the issuance of the patent during the day of its date, unless said day be included in the computation of the five years during which the disability or limitation was in existence.

It seems to us that this proposition is so clear and axiomatic that it is unnecessary to elaborate or discuss it at length.

We therefore conclude that the day of the date of said patent should be included, and that the deed to Young for the entire 160 acres of land is a good and valid conveyance, and the judgment of the district court is reversed, and judgment ordered to be entered

below in accordance with this opinion, and as prayed for in the separate answer and counter-claim of appellant Timothy Young.

All the justices concurring.