## STYLES et al. v. DICKEY et al.

(134 N. W. 702.)

**Appeal — statement of case — motion to strike out.**

1. Under the record, respondents' motion to strike out the settled statement of the case is denied.

**Mortgage foreclosure — redemption — computation of time for.**

2. Where the last day of the year from the day of sale on mortgage foreclosure had falls on Sunday, a holiday under the statute, redemption on the Monday following is permitted under § 6736, Rev. Codes 1905.

**Mortgage foreclosure — redemption — computation of time for.**

3. The day of sale in determining the period within which redemption may be made is excluded.

**Mortgage — redemption.**

4. The owner is entitled to redeem by the payment to the certificate holder of the purchase price with 12 per cent interest thereon where no taxes or assessments have been paid by such purchaser.

**Mortgage — redemption — payment of liens.**

5. Such purchaser cannot compel payment by the owner effecting redemption of any other liens, either prior or subsequent, owned by the purchaser at the time of redemption from the sale.

**Mortgage — redemption — filing of notice.**

6. The owner to effect redemption need not file with the register of deeds nor serve upon the sheriff any written notice of redemption, as must be done where redemption is made by a redemptioner as distinguished from a mortgagor or owner of the equity of redemption.

---

Note.—The question as to how a period of time is to be computed when the last day thereof falls on Sunday or a holiday is treated in a note in 14 L.R.A. 120. Many of the states now have statutes providing that if the first or last day on which an act is done falls on Sunday or a holiday, that day is to be excluded in the computation of time, and the cases which have construed such statutory provisions are reviewed in a note in 49 L.R.A. 204, as part of an elaborate note on the broader question of rule as to first and last days in computation of time.

**Mortgage — redemption — action to determine adverse claims — scope of relief.**

7. The parties by their pleadings having both sought an adjudication of all liens and interpleaded the same in this action, brought as an action to determine adverse claims and so tried below, this court will administer full equitable relief within the scope of the pleadings and the proof, and it is held: (a) The certificate of redemption was properly issued and canceled the certificate of sale. (b) An accounting is had for payments made by collection of collateral security by mortgagees, and the same is applied in payment on a mortgage involved in the pleadings and proof and held by respondents. (c) The excess of money in the sheriff's hands over the certificate of sale, tendered in full of other claims, pursuant to a statement of amount necessary to redeem, filed by the certificate holder, is ordered applied in payment of said liens, with taxable costs then to be deducted.

**Mortgage — redemption — under quitclaim deed given for contingent consideration.**

8. The quitclaim deed under which redemption was had, though given for a contingent consideration, is valid under the facts of the case and entitles the successor in interest of the mortgagor to redeem.

Opinion filed January 12, 1912. Rehearing denied February 19, 1912.

This opinion is after rehearing had.

Appeal from District Court, Pierce county; *Burr*, J.

Action by Asa J. Styles and another, partners as Styles & Koffel, against George H. Dickey and another. From a judgment for plaintiffs, defendants appeal.

Reversed and judgment ordered for appellants.

*A. E. Coger* and *T. A. Toner*, for appellants.

*Styles & Koffel*, for respondents.

Goss, J. The first question presented is on a motion to strike out the statement of the case and appellants' abstract, because the settled statement of the case did not have embodied therein the proposed amendments thereto claimed by respondents to have been served upon appellants in time. Service of them was made by mailing on the twenty-first day after service of appellants' proposed statement, the twentieth day falling on Sunday. Owing to the delay in the mails, they did not reach appellant's counsel until the twenty-third day after he had served his proposed statement; and previously, on the twenty-second day, he had

procured the proposed statement to be settled as by default. The amendments were promptly returned with a notice that settlement had been had. Appeal was perfected without delay and appellants' brief and abstract, containing altogether three hundred printed pages, promptly filed. Thereafter and six months after the statement had been settled, during which time no effort was had by respondents to cause their proposed amendments to be made a part of the statement, appellants are met by this motion to strike. The good faith of the appellants cannot be questioned, it being plainly apparent from their speedy appeal and their being fully prepared to present their case on the merits as was done at the time of the hearing of the motion. They have incurred several hundred dollars' expense during the time respondents have been inactive, and when on short notice respondents could have obtained a review of their proposed amendments by the trial court and its determination of whether any of them should have been incorporated as a part of the statement as settled. Besides, the statement was settled without notice of any proposed amendments, and is presumed to have been carefully done so as to truly represent the proceedings had in the lower court. We cannot presume the amendments would have been allowed. No motion is made to remand the record that application may be made to permit such amendments. For all purposes the statement as settled is here controlling. Respondents cannot at this late date expect the court to virtually decide the case regardless of its merits by the granting of the motion after their own acquiescence in the state of the record has placed the appellants in their present predicament. Thompson v. Missouri P. R. Co. 50 Neb. 330, 70 N. W. 385; Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032; Blessett v. Turcotte, 20 N. D. 151, 127 N. W. 505.

The one-year period for redemption from the mortgage foreclosure sale expired on Sunday. On the Monday following, the redemption money was paid the sheriff, who issued a certificate of redemption from the sale. This money respondents refused to receive, claiming:

(1) That no redemption could be made after the expiration of the period of one year from the sale, and that § 6736, Rev. Codes 1905, did not permit the redemption on the Monday following.

(2) That if redemption was had in time an insufficient amount to redeem was paid the sheriff.

As to the first contention: The redemption was had under §§ 7139 et seq., Rev. Codes 1905, § 7140 providing: "The judgment debtor or redemptioner may redeem the property from the purchaser *within one year after the sale* on paying the purchaser the amount of his purchase with 12 per cent interest thereon." Was the redemption in time? Sec. 6736 reads: "Computation of time. The time in which *any act provided by law* is to be done is computed by excluding the first day and including the last, *unless the last is a holiday, and then it is also excluded.*" (Italics are ours.) And under § 6710 every Sunday is a holiday. Both these provisions have been in force since territorial days. See § 4749, Compiled Laws, declaring every Sunday a holiday, and § 4805, Compiled Laws, identical with § 6736, Rev. Codes 1905. Both were re-enacted in the 1895 Rev. Codes as §§ 5124 and 5150 thereof, respectively.

From the authorities it appears that at common law the Sunday of a period not measured in days is included, and performance on the following Monday not permitted. See Haley v. Young, 134 Mass. 365, and People ex rel. Pugsley v. Luther, 1 Wend. 43, both on all fours with the case at bar if it were not for § 6736. The contrary is the rule as to performance where limited by contract; and where the last day is Sunday under contract obligations it would be excluded and performance permitted the following day in the absence of a statute regulating such computation of time. In court practice, both under rules of court and statutes regulating procedure, where the last day for performance falls on Sunday, where the time within which the act is to be done is measured by days, generally performance can be made on the Monday following, but this rule does not apply to statutes construed as mandatory as to time provisions. See Pemberton v. Duryea, 5 Ariz. 8, 43 Pac. 220; Morgan v. Perkins, 94 Ga. 353, 21 S. E. 574; Close v. Twibell, 47 Ind. App. 290, 92 N. E. 377; Kinney v. Heuring, 42 Ind. App. 263, 85 N. E. 369; Conklin v. Marshalltown, 66 Iowa, 122, 23 N. W. 294; Webb v. Strobach, 143 Mo. App. 459, 127 S. W. 680, applying to a ten-day ordinance provision; Keys v. Keys, 217 Mo. 48, 116 S. W. 537, applying to filing of claims against an estate; Schnepel v. Mellen, 3 Mont. 118; Cock v. Bunn, 6 Johns. 326, extending a twenty-day habeas corpus limit over Sunday; Broome v. Wellington, 1 Sandf. 664; Conway v. Smith Mercantile Co. 6 Wyo. 327, 49 L.R.A. 201, 44 Pac. 940;

Allen v. Elliott, 67 Ala. 432; Edmundson v. Wragg, 104 Pa. 500, 49 Am. Rep. 590; Barnes v. Eddy, 12 R. I. 25; Thayer v. Felt, 4 Pick. 354; and Salter v. Burt, 20 Wend. 205, 32 Am. Dec. 530.

The rule must give way to the intent of the statute prescribing the time limit, where the intention is obvious that the limit shall be as fixed by such statute. Taylor v. Brown, 147 U. S. 640, 37 L. ed. 313, 13 Sup. Ct. Rep. 549, affirming a Dakota territorial decision in 5 Dak. 335, 40 N. W. 525.

By the very wording of § 6736, it applies only to acts provided by law to be done. The statute is plain and unambiguous. With the holiday exception omitted therefrom, it would be committing an assault and battery on the statute to hold it not to be a general rule applicable according to its terms, to the end that "the time in which any act provided by law is to be done is computed by excluding the first day and including the last." English language is incapable of prescribing a rule more plain and definite. We cannot see where the addition thereto of the words "unless the last is a holiday, and then it is also excluded," leaves the meaning of the statute open to question or renders the statute in any degree ambiguous. The statute prescribes its application in general words; viz. to "the time in which any act provided by law is to be done." So, unless this general rule announced by § 6736 is inapplicable because of a contrary intent appearing from the statutes governing redemption, it must apply and extend the period therefor where the last day for performance falls on Sunday. In order to apply the statute at all, such must be the result. It applies unless the redemption statute as a later provision is exempted by its terms from the rule as to computation of time expressed in § 6736. Our statute permitting redemption from real estate sales existed in territorial days in the main as it now stands. It is impossible to come to the conclusion therefrom that any of the statutes on redemption exclude the operation of the statutory rule for computation of time any more than does any general time limit statutory provision. And if all such provisions are to be construed as governing according to their terms, independent of the statutory rule of computation of time, to what can § 6736 ever be applicable? It must be construed according to its terms under any principle of interpretation of statutes. We cannot disregard it as not a statute of general application. To do so is to violate the statute in words and intent.

But let us consult legislation of other states. Many of the states have a rule similar to ours in this respect. Some of them provide, as do Wisconsin and New York, in express terms, that for the statute to be operative the time limit must be expressed in days. See Williams v. Lane, 87 Wis. 152, 58 N. W. 77; Ryer v. Prudential Ins. Co. 185 N. Y. 6, 77 N. E. 727, reversing 110 App. Div. 897, 95 N. Y. Supp. 1158, and following the leading New York case of Aultman & T. Co. v. Syme, 163 N. Y. 54, 79 Am. St. Rep. 565, 57 N. E. 168; Benoit v. New York C. & H. R. R. Co. 94 App. Div. 24, 87 N. Y. Supp. 951. Alabama, California, Missouri, Indiana, Minnesota, Washington, Nebraska, Nevada, and Pennsylvania have our statute, § 6736; and a statute identical in substance exists in Illinois. See Burns's Anno. Stat. (Ind.) § 1304; Mo. Rev. Stat. 1899, § 4160; Wash. Stat. 1899, § 794, formerly § 743; Ill. Rev. Stat. 1874, chap. 100, § 6. See statute cited with holdings thereon in Bovey-DeLaittre Lumber Co. v. Tucker, 48 Minn. 223, 50 N. W. 1038; Spencer v. Haug, 45 Minn. 231, 47 N. W. 794; McCafferty v. Flinn, 32 Nev. 269, 107 Pac. 225; Spokane Falls v. Browne, 3 Wash. 84, 27 Pac. 1077; Kinney v. Heuring, 42 Ind. App. 263, 85 N. E. 369; also Jordan v. Chicago & A. R. Co. 92 Mo. App. 84, following Evans v. Chicago & A. R. Co. 76 Mo. App. 468, both cases expressly overruling the two former Missouri contrary constructions of statute as construed in Miner v. Tilley, 54 Mo. App. 627, and Patrick v. Faulke, 45 Mo. 312, which last-mentioned case has been followed in California in Hibernia Sav. & L. Soc. v. O'Grady, 47 Cal. 580, that state having adopted the rule in the Patrick v. Faulke Case from Missouri, subsequently repudiated in Missouri. There is one case in Alabama contrary to our holding, but with reasoning as unsatisfactory as the Patrick v. Faulke Case. See Allen v. Elliott, 67 Ala. 432. The leading case on this subject construing the Nebraska statute identical with ours is Johnston v. New Omaha Thomson-Houston Electric Light Co. 86 Neb. 165, 125 N. W. 153, 20 Ann. Cas. 1314, citing numerous authorities, among them Cooley v. Cook, 125 Mass. 406, a construction of a similar rule in bankruptcy proceedings under U. S. Rev. Stat. § 5013. For similar holdings permitting tax redemption on Monday following Sunday, see English v. Williamson, 34 Kan. 212, 8 Pac. 214; Cable v. Coates, 36 Kan. 191, 12 Pac. 931; Hicks v. Nelson, 45 Kan. 51, 25 Pac. 565; Gage v. Davis, 129 Ill. 236, 16 Am. St. Rep. 260, 21

N. E. 788; Brophy v. Harding, 137 Ill. 621, 27 N. E. 523, 34 N. E. 253; Picket v. Allen, 10 Conn. 146; and Cressey v. Parks, 75 Me. 387, 46 Am. Rep. 406. Consult, also notes to 14 L.R.A. 120, and 49 L.R.A. 193, and Decen. Dig. under "Sunday." As the New York and Wisconsin statutes are different from our § 6736, their holdings are not applicable. We follow the Minnesota court in Spencer v. Haug, construing a section identical with the one under consideration of our statutes declaring that "inasmuch as the certainty of a rule is of more importance than the reason of it, we think the legislature intended . . . to put an end to all this confusion and uncertainty by adopting a uniform rule for the computation of time alike applicable to matters of mere practice and to the construction of statutes."

But respondents insist that inasmuch as redemption was possible after the sale, but on the day of sale, that such date of sale should be included in the count, which would prevent redemption on the date of the yearly anniversary of the sale, and compel redemption within one year from the date of sale, including that day in the count; and cite § 7140, Codes of 1905, and Taylor v. Brown, 5 Dak. 335, 40 N. W. 525, as supporting this contention. In so doing appellants ignore the provisions from § 7141, declaring "but all persons entitled to redeem shall in all cases have the entire period of one year from the day of sale in which to redeem." Then again § 7144 provides that no more shall be required to redeem than the purchase price with 12 per cent interest "from the day of sale," with taxes and assessments. These matters cannot be construed to prevent redemption at any time within one year from, but including the day of sale; and consequently Taylor v. Brown cannot be considered as authority for appellants' construction urged. The owner of the land had the right to redeem on Monday, May 7, 1906, from the mortgage sale had on May 6, 1905, as May 6, 1906, was Sunday and § 6736 permitted redemption on Monday following.

The sufficiency of the redemption and incidental questions of law and fact involved therein are next in order. Respondents became the owners by purchase of the certificate of sale amounting to $172.10, issued on foreclosure had May 6, 1905; which certificate was assigned in writing to them the September following. Respondents had prior to the sale procured an assignment of an outstanding subsequent mortgage on the same land for $150 and interest from January 2, 1904, at 12 per

cent, past due and unpaid. They had also purchased and had assigned to them a second subsequent mortgage of $335, with interest at 12 per cent from its date, January 7, 1904, and due October 1, 1904, executed to the First State Bank of Maddox as mortgagee, which indebtedness evidenced thereby had been ever since its inception further secured by collateral notes of one K. Ripplinger to the mortgagor, who had indorsed the same to said bank. This collateral mortgage consisted of two notes secured by chattel mortgage for the aggregate sum of $265, both dated September 15, 1903, one for $135, due October 15, 1904, the other for $130, due October 15, 1905, both bearing interest before maturity at 10 per cent and after maturity at 12 per cent. It is regarding the payment of these two collateral notes and the application of the proceeds that the real cause for this lawsuit arose. Respondents on December 1, 1905, also paid $40.25, the interest payment falling due on a prior mortgage to the one foreclosed. After having recorded the assignments of these various mortgages, respondents served upon the sheriff and filed with the register of deeds duplicates of a notice of the amount claimed as necessary to redeem from the foreclosure certificate. In this notice respondents demanded the mortgagor should pay the full amount of the liens purchased by them in addition to the amount of the certificate on foreclosure, amounting in the aggregate to $819.55. The Ripplinger notes had, subsequent to the foreclosure sale and in October, 1905, been paid in full to respondents, to whom the bank assigned this collateral along with the $335 mortgage, both securing the same assigned debt. These Ripplinger notes had been sent by the bank to respondents for collection. They knew these notes were such collateral security to the $335 mortgage debt. Respondents forced collection and obtained thereon the following payments: $15, paid October 19, 1905; $290, paid October 20, 1905; $16.65, paid October 28, 1904. On January 21, 1904, a few days after the execution of the $335 mortgage note, the sum of $28.90 was paid thereon, being the proceeds remaining from a first mortgage on said premises. So that the collateral Ripplinger notes had been paid in full, respondents receiving therefrom $321.65; and the $335 mortgage note had been reduced after its execution by $28.90 paid the bank who then owned it, making a total payment on this $335 mortgage note and interest of $350.55. Respondents had in effect taken the $305 received by them in the fall of 1905 from the Ripplinger collateral, and

therewith purchased from the bank the principal note of $335, paying a small difference. This principal indebtedness carried with it the collection from the collateral; and in the notice of amount necessary to redeem respondents again demand the payment in full of this $335 note. They have never accounted to Swanson or Dickey for the collection on the collateral paper, nor have they applied the $28.90 payment on the principal note.

All the foregoing mortgages were given by the same mortgagor and owner of the land, Swanson, who a short time before the expiration of the year of redemption conveyed by quitclaim deed to appellant Dickey his interest in the quarter section of land mortgaged. Dickey demanded an accounting and application by respondents of these payments, and, being unable to obtain it, paid the sheriff $550, claiming the same as a sufficient payment to redeem from the foreclosure and satisfy all liens on the land held by respondents, who refused to receive the money. The sheriff executed his certificate of redemption from the sale. Thereafter plaintiffs and respondents bring this action to compel cancelation of such redemption certificate and the issuance to them of a sheriff's deed on the foreclosure, and that their title be quieted. To this defendants join issue, pleading that an excessive amount is demanded as the amount required to redeem, and reciting wherein respondents have as above stated failed to account, and ask that the redemption be confirmed and title be quieted in Dickey, defendant, and that all liens purporting to be held by respondents be determined in amount and be adjudged paid, and that the money in the sheriff's hands be ordered applied to such full payment. The evidence fully justifies the conclusions hereinbefore recited and the prayer for relief of the defendant Dickey. Respondents deny that the bank held the notes as collateral, but that claim has no basis in the proof; the bank cashier, Wesley Styles, testifying repeatedly and positively to the notes being received and held as collateral and as additional security to the mortgage indebtedness, and that the collateral notes that had previously been collected were transferred with the mortgage indebtedness on payment of the face of the mortgage indebtedness. And the testimony of respondents themselves admit the collection, and that the fund so obtained was a part of the money with which the assignment of the real estate mortgage and debt was secured. Asa J. Styles was vice president of the bank which

owned this paper, and Wesley Styles was its cashier. Besides imputed notice, actual knowledge of the entire transaction is shown in both respondents. One Swanson was the owner of the land, and as mortgagor executed all the mortgages and collateralled these notes to the bank. He never has received any of the money paid on these collateral notes. The evidence does develop the real cause underlying this controversy. Shortly after respondents realized on the collateral notes trouble arose between them and the bank, resulting in their withdrawing their interests therein and accepting in settlement this $335 mortgage with other commercial paper. If these respondents by refusing to account succeeded in compelling payment to them of the full amount of their claim, with no deductions for moneys received from collateral security collected by them, they not only realize that much more in practically obtaining this $335 mortgage for nothing, but besides, under claim of having accounted to the bank, leave it responsible to Swanson for the amount of the collateral for which such bank must account. The land may have been mortgaged for more than its full value prior to said foreclosure, but because of subsequent increase in value the equity of redemption has become valuable. In explanation further of respondents' position taken, they contend that, in the absence of a specific agreement whereby the bank was employed to apply the collateral collections on the principal or mortgage debt, under a custom of the bank to hold such collections on deposit subject to the further order of the mortgage debtor, it was not applied and never has been; and that accordingly their collection does not preclude them from realizing the full amount of the $335 mortgage debt. But in the first place, they have wholly failed to prove any custom or agreement to withhold the application of the collateral on the collection to the principal debt. In the second place, the law under a general collateral agreement makes the application and discharges the debt *pro tanto*. See §§ 5241 & 5243, Rev. Codes 1905; 30 Cyc. 1220. This collateral agreement was but the ordinary business transaction understood by the indorsing and delivery of promissory notes by the debtor to his creditor, and that such notes might be held by the creditor as collateral security to the main obligation. It is elementary that the creditor in such a case, on collection of collateral, has the right to, and under the implied contract arising must, apply collections from the collateral as received on the principal debt.

The situation was identical to what it would have been had the debtor in person paid the money, instead of its having been paid by his debtor to his creditor. When this mortgage note was received by respondents from the bank, such indebtedness had been paid to the amount of $350.-55, and but a small part of the mortgage debt remained unextinguished.

Lest this opinion be misleading under the judgment hereinafter ordered, we will state that it was not necessary that Dickey, in order to effect redemption, pay more than the amount of the certificate of foreclosure, with statutory interest thereon from the day of sale. Respondents contend he was obliged in order to redeem to pay in addition to the amount of their certificate of sale the amount of all subsequent mortgage liens held by them. Such is not the statutory requirement where the owner redeems from a mortgage foreclosure whether redeeming from the purchaser or a subsequent redemptioner. See § 7144, Rev. Codes 1905. As our early statutes were identical with those of California and South Dakota, their cases are interesting reading on this question. Consult Phillips v. Hagart, 113 Cal. 552, 54 Am. St. Rep. 369, 43 Pac. 843; Leet v. Armbruster, 143 Cal. 663, 77 Pac. 653; Spackman v. Gross, 25 S. D. 244, 126 N. W. 389. From our own court consult State ex rel. Brooks Bros. v. O'Connor, 6 N. D. 285, 69 N. W. 692, the rule announced in which probably caused the enacting of the present § 7141, Rev. Codes 1905. See also Franklin v. Wohler, 15 N. D. 613, 109 N. W. 56, and North Datoka Horse & Cattle Co. v. Serumguard, 17 N. D. 466, 117 N. W. 453, 29 L.R.A. (N.S.) 508, and note, 138 Am. St. Rep. 717. The respondents contend that because Dickey recorded, instead of filed, a written notice of redemption given by him under § 7142, Rev. Codes 1905, his redemption is invalid. We do not determine the effect of such an omission, as no necessity existed for any written notice of redemption to have been given under the section cited. It was not necessary that Dickey file or record any notice or redemption whatever, as the tender to the sheriff of the amount necessary to redeem from said sale effected redemption and restored Dickey to his full estate in the land under the foregoing authorities, and particularly, see Spackman v. Gross, 25 S. D. 244, 126 N. W. 389, at page 393. And respondents, having paid no taxes or assessments upon this land, were under no obligation to serve upon the sheriff or file with the register of deeds a statement of the amount necessary to redeem so far as the debtor

was concerned. However, the filing of such a statement was a proper business precaution to protect the rights of respondents, as to other liens held by them, as against a redemption to be made by mortgagees or lienors subsequent to the liens held by respondents. But Dickey stands in the shoes of the mortgagor as a successor in interest. See Phillips v. Hagart. As the amount paid the sheriff was in excess of that necessary to redeem, the certificate of redemption was properly issued and is valid.

Respondents have challenged the right of Dickey to redeem, and have offered in evidence a letter tending to show that the consideration for the deed is a promise of Dickey to pay $100 in the event of his ability to effect redemption from this sale. The deed, being a written instrument, is presumptive evidence of having been executed and delivered for a consideration. § 5325, Rev. Codes 1905. But such a conditional promise to pay is a valid and sufficient consideration. 2 Tiffany, Real Prop. 876. And, as respondents' rights to recover the money owing them are in no wise prejudiced by this transfer, it makes no difference to them in fact whether Swanson or Dickey owns the land, so long as their lien indebtedness is paid. The following from Anthes v. Schroeder, 3 Neb. (Unof.) 604, 92 N. W. 196, is therefore applicable: "A creditor has no standing in a court of equity to question a conveyance by his debtor which does not impair the security of his debt or delay him in the collection thereof. Equity will not aid avarice in purloining property."

The sole question left is the relief to be granted. The respondents as plaintiffs brought this action to determine adverse claims. Under the issues and the evidence, judgment must be awarded for the defendants. Both parties have asked for complete equitable relief and the determination of their respective claims regarding this tract of land, the subject-matter of the controversy. The court therefore considers itself clothed in equity, with authority to grant as full relief as is sought by the pleadings and within the scope of the proof. Accordingly the $550 in the hands of the sheriff will be applied as follows: $192.75, the amount due May 7, 1906, on the $172.10 certificate, fully pays and cancels the certificate of sale, and restores Dickey to his estate in the land, wholly relieved from the mortgage so foreclosed upon; $42.33 on said date due on the mortgage coupon of the prior mortgage, which

coupon is plead as a part of the cause of action by plaintiff in this suit, is decreed paid and satisfied, as is also the mortgage for $150 and interest held by respondents and obtained from Grant Youmans, and which amounted on May 7, 1906, to $192.15.  And the sum of $80.35 remaining unpaid on the $335 mortgage obtained by respondents from the First State Bank of Maddox, after the application thereon of $350.55, is to be deducted in full payment of said mortgage and indebtedness thereby secured.  And the balance, $42.42, necessary to make up the $550 tender on the foreclosure to the sheriff, is to be returned to the defendant Dickey.  That the district court will enter judgment accordingly, fully satisfying all the foregoing liens and secured indebtedness. The appellants will recover of respondents judgment for their costs and disbursements, allowed in that behalf by law, in the district court and in this court, and such allowance will be taxed by the district court and entered as a judgment against plaintiffs, and any balance remaining over the amount of all of said liens satisfied by this judgment will, on demand, be paid respondents.  The sheriff will forthwith deposit the $550 in his hands with the clerk of the district court, who will retain the same subject to the judgment of that court to be entered in conformity with this opinion.  The judgment appealed from is ordered vacated and ordered entered as above directed.

SPALDING, Ch. J.  While I concur in this opinion, I desire to say that, as to the time when the period of redemption expires, I do so because it would be of no avail to do otherwise, and it is more important that the rule be definitely established, one way or the other, than it is how it is established.

The construction placed upon the law by this decision will not deprive parties seeking to redeem of any supposed right on which they may have relied; and it is in the interest of debtors, although I am satisfied that the bar of the state has generally acted upon the supposition that the time expired at the end of the calendar year, regardless of the last day being Sunday.