# TAYLOR *v.* BROWN.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
DAKOTA.

No. 112. Argued and submitted January 9, 1893. — Decided March 6, 1893.

In computing the time during which the alienation of public land acquired
by an Indian under the provisions of § 16 of the act of March 3, 1875, c.
131, (18 Stat. 402,) is forbidden, the day of the issue of the patent should
be included.

THIS was an action commenced by Taylor and Bidwell
against Brown and Young, impleaded with others, in the
District Court of the Fourth Judicial District of the Terri-
tory of Dakota, within and for the county of Moody, July 17,
1885, and in which an amended complaint was served March
1, 1886. The prayer of the complaint was that certain deeds
should be adjudged and declared clouds on the plaintiff's
alleged title to one hundred and sixty acres of land therein
described, and be decreed null and void and of no effect, and
that the plaintiffs should be decreed to be the legal owners of
the property. Young and Brown were the only parties served.
They answered separately, requested separate findings in
their favor, and the court found separately, as to and against
each of them, whereupon each moved for a new trial, and,
their motions being overruled and judgment being entered
against them, took separate appeals to the Supreme Court of
the Territory.

The cause was tried by the District Court upon the admis-
sions in the pleadings and the evidence adduced, and there-
upon the court found, in brief, that on June 15, 1880, a patent
issued to one Thomas K. West for the one hundred and sixty
acres in question, and was duly recorded October 7, 1881;
that on January 25, 1881, the patentee and his wife conveyed
to defendant Young forty acres of the tract for valuable con-
sideration, the receipt of which was acknowledged; and that
Young entered into actual possession of the forty acres on

that date, and had ever since occupied, used and cultivated the land, using and claiming the same in his own right adversely to all the world and especially as against the plaintiffs, and had erected and made valuable, permanent improvements thereon.

That on August 13, 1881, West conveyed to his wife eighty acres of the tract by deed bearing that date, acknowledging the receipt of a valuable consideration, and recorded October 7, 1881; that on August 15, 1881, Mrs. West conveyed to defendant Brown the eighty acres in consideration of the sum of $300, paid to her on that date; that Brown entered into actual possession of the eighty acres August 15, 1881, claiming it in his own right and title thereto under the deed to him, and occupied, used and cultivated the land, using and claiming the same in his own right from that date adversely.

That on June 15, 1885, by deed recorded that day, West and his wife conveyed the whole one hundred and sixty acres to Young for a valuable consideration, the receipt of which was acknowledged, and on the last-mentioned date, Young entered into actual possession of the premises, claiming them in his own right and title thereto, and that since that date Young occupied and used the land, and had been in actual possession of the whole of it, using and claiming the same adversely.

That West and his wife on June 17, 1885, and from August 15, 1881, were not in the actual possession or otherwise of either the forty or the eighty acres; that West and his wife, on June 17, 1885, conveyed the land to C. E. Thayer, who, on June 19, conveyed the one hundred and twenty acres to the plaintiffs; that neither said Thayer nor his wife were on June 19, or at any other time prior to or since that date, and at the time of the delivery of the deed to the plaintiffs, in actual possession of the forty acres, nor were they in actual possession of any part of the said tract.

That Thomas K. West was a Sioux Indian who had arrived at the age of twenty-one years and who had abandoned his tribal relations and made satisfactory proof of such abandonment by taking an oath of allegiance to the United States

government, and who was entitled, under sections 15 and 16 of chapter 131 of the Laws of the United States, passed March 3, 1875, entitled "An act making appropriations to supply deficiencies in the appropriations for fiscal years ending June 30, 1875, and prior years, and for other purposes," to enter a homestead under the laws of the United States, and had entered said land under said laws and duly proved up on the same and received the patent referred to.

That the deeds to Young, Alfred Brown, and Sophia West, were made within five years from the date of the patent to West by the United States; that the adverse possession of Brown and Young was entirely founded on conveyances that were absolutely null and void; and that the possession of Brown and Young of the premises and the improvements made thereon were made with full notice that West was an Indian, as previously found.

The court stated the following conclusions of law:

"I. That the land described in said patent was absolutely inalienable prior to the 16th day of June, 1885; that the deeds from Thomas K. West to Timothy Young, of January 25, 1881, June 15, 1885, and from Thomas K. West to Sophia West, of August 13, 1881, and from Sophia West to Alfred Brown, of August 15, 1881, are null and void.

"II. That the deed from Thomas K. West and Sophia West to C. E. Thayer on the 17th day of June, 1885, and the deed from C. E. Thayer and wife to S. S. Taylor and S. A. Bidwell are good and valid conveyances, and conveyed the title of said premises to the said plaintiffs.

"III. That the plaintiffs, S. S. Taylor and S. A. Bidwell, are the owners of said premises."

The Supreme Court of the Territory reversed the judgment of the District Court and remanded the cause with directions to dismiss the plaintiffs' complaint. The opinion will be found in 5 Dakota, 335.

*Mr. S. S. Burdett* and *Mr. C. H. Winsor*, for appellants, submitted on *Mr. Winsor's* brief.

*Mr. Robert J. Gamble* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court:

By section 15 of the act of March 3, 1875, 18 Stat. 402, c. 131, any Indian born in the United States, who was the head of a family or who had arrived at the age of twenty-one years, and who had abandoned or might thereafter abandon his tribal relations, was, on making satisfactory proof of such abandonment, entitled to the benefits of the act entitled "An act to secure homesteads to actual settlers on the public domain," approved May 20, 1862, and acts amendatory thereof, "*provided, however,* that the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance or the judgment, decree or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor."

By section 16, in all cases in which Indians had theretofore entered public land under the homestead law and proceeded in accordance with the regulations of the Land Office, the conditions prescribed by law having been complied with, the entries so allowed were confirmed and patents directed to issue thereon, " subject, however, to the restrictions and limitations contained in the fifteenth section of this act in regard to alienation and incumbrance."

West came within the sixteenth section, and obtained his patent accordingly.

The question, upon the disposition of which the decision of the Supreme Court of the Territory was based, and which we are first to consider, arises upon the proper construction of the proviso to the fifteenth section. The restraint on alienation was to continue for a period of five years. Was it the intention that the computation of time should include the day of the issue of the patent? If so, the deed of June 15, 1885, was not invalid, and the decree must be affirmed.

In *Matthews* v. *Zane,* 7 Wheat. 164, 211, Mr. Chief Justice Marshall remarked that it was the known rule " that a statute for the commencement of which no time is fixed, commences

from its date;" and in *Arnold* v. *United States,* 9 Cranch, 104, 120, in which it was held that a statute providing that it should take effect "from and after the passing of this act" took effect immediately, Mr. Justice Story said that "it is a general rule that when the computation is to be made from an act done, the day on which the act is done is to be included."

But this cannot be said to be a universal rule either in England or this country. *Webb* v. *Fairmaner,* 3 M. & W. 473; *Robinson* v. *Waddington,* 13 Q. B. 753; *Sheets* v. *Selden,* 2 Wall. 177; *Calvert* v. *Williams,* 34 Maryland, 672; *Parkinson* v. *Brandenburg,* 35 Minnesota, 294; *Bemis* v. *Leonard,* 118 Mass. 502, where many cases are referred to and considered.

In *Hatter* v. *Ash,* 1 Ld. Raym. 84, it was argued that the words "from the date," when used to pass an interest, included the day; *aliter,* when used by way of computation in matters of account; and Powell, senior Justice, was of this opinion, but the other justices expressed none.

The distinction indicated was recognized by the Supreme Court of Pennsylvania in *Lysle* v. *Williams,* 15 S. & R. 135, where a *scire facias* was issued on the 22d of July, 1823, upon a bond dated the 22d of July, 1818, and payable in five years from the date, and the court held that, as upon the execution of the bond an immediate interest passed to the plaintiff, the first day should be included in the five years, and that the *scire facias* was properly issued.

While it is desirable that there should be a fixed and certain rule upon this subject, it must be conceded that the rule which excludes the *terminus a quo* is not absolute, but that it may be included when necessary to give effect to the obvious intention.

This was the view entertained by Lord Mansfield who ruled in *Pugh* v. *Duke of Leeds,* 2 Cowp. 714, that "the sense of the word 'from' must always depend upon the context and subject-matter, whether it shall be construed inclusive or exclusive of the *terminus a quo.*"

In *Lester* v. *Garland,* 15 Ves. 248, it was held by Sir William Grant that, in computing time from an act or event, no

general rule of inclusion or exclusion should be laid down; that it depended on the reason of the thing according to the circumstances.

In *Griffith* v. *Bogert*, 18 How. 158, 163, the law of Missouri allowed the lands of a deceased debtor to be sold under execution, but prohibited it from being done until after the expiration of eighteen months from the date of the letters of administration upon his estate. The case involved a sale which took place on the first of May, 1821, the letters of administration being dated November 1, 1819, and it was held that the sale was valid as the *terminus a quo* should be included. Mr. Justice Grier, speaking for the court, discussed the vexed question of the inclusion or exclusion of the *terminus a quo* with great vigor, and said: "It would be tedious and unprofitable to attempt a review of the very numerous modern decisions, or to lay down any rules applicable to all cases. Every case must depend on its own circumstances. Where the construction of the language of a statute is doubtful, courts will always prefer that which will confirm rather than destroy any *bona fide* transaction or title. The intention and policy of the enactment should be sought for and carried out." And, reasoning upon the case in hand, he added: "The object of the legislature was to give a stay of execution for eighteen months, in order that the administrator might have an opportunity of collecting the assets of the deceased and applying them to the discharge of his debts. The day on which the letters issue may be used for this purpose as effectually as any other in the year. The rights of the creditor to execution are restrained by the act for the benefit of the debtor's estate. The administrator has had the number of days allowed to him by the statute to collect his assets and pay the debts. The construction which would exclude the day of the date is invoked, not to avoid a forfeiture or confirm a title, but to destroy one, obtained by a purchaser in good faith under the sanction of a public judicial sale." And see *Dutcher* v. *Wright*, 94 U. S. 553.

It may also be observed that, as to the general doctrine that the law does not allow of fractions of a day, it is settled that when substantial justice requires it courts may ascertain the

precise time when a statute is approved or an act done. *Louisville* v. *Bank*, 104 U. S. 469.

The power of free alienation is incident to an estate in fee simple, but a condition in a grant preventing alienation to a limited extent or for a certain and reasonable time may be valid, and the grantee forfeit his estate by violating it, (1 Prest. Est. 477,) and while such a result does not ensue in transactions with members of a race of people treated as in a state of pupilage and entitled to special protection, (*Pickering* v. *Lomax*, 145 U. S. 310; *Felix* v. *Patrick*, 145 U. S. 317, 330,) yet the proviso in question may fairly be held to have been adopted in view of general principles. If, when the patent issued, June 15, 1880, West could have conveyed but for a specific restriction taking effect at the same moment, then that date should be included in the period of five years prescribed. The proviso is that the title shall not be subject to alienation in the various ways described, and shall be and remain inalienable for a period of five years from the date of the patent. Possibly the language is susceptible of being construed to mean that the land should be inalienable on the day of the issue of the patent and for five years after that date, two periods of time, but we are of opinion that the more natural and the true construction is that only one period is referred to, and that the day the patent issued should not be excluded. The limitation on alienation was to be and to remain, that is to say, the land was to be on the first day not subject to alienation, and so to remain until the five years had expired. The protection of the Indian against the improvident disposition of his property was fully attained in the judgment of Congress by fixing the period of five years, and no reason is perceived why any more than that time should be assumed to have been within the legislative contemplation.

The power to alienate came with the patent and the restriction for the period named was carefully drawn to operate *eò instanti;* that is, to commence in its entirety coincidently with the possession of the power.

*The decree of the Supreme Court of the Territory is affirmed, and the mandate will issue to the Supreme Court of South Dakota for further proceedings in conformity to law.*