JAMES H. BUDDS and Another v. GEORGE M. FREY.[1]

June 19, 1908.

Nos. 15,756—(114).

**Computing Time "From."**

Whether the word "from" shall be construed as inclusive or exclusive of the terminus a quo depends upon the subject-matter and context. When it refers to the time within which an act is required or permitted to be done, the statute (R. L. 1905, § 5514, subd. 21) provides that, with certain exceptions, the first day shall be excluded.

**Same—In Lease.**

But when the words "from the date," or "from" a day named, are used in connection with the creation of an estate or interest, and it is not contrary to the expressed intention of the parties, the date named from which the estate or interest is to exist is to be included, and the estate or interest vests on that day.

**Possession of Tenant.**

The rights of a tenant in possession of real property under a valid unexpired lease are not affected by a replatting of the land by the owner in fee, or the dedication of a portion of such land for a public alley. He cannot be disturbed in the possession of the land until his lease is legally terminated. But such platting cannot confer upon him the right to remain in possession after his lease is legally terminated, and he must therefore surrender possession to the owners of the fee.

**Defect of Parties.**

The question of a defect of parties plaintiff or defendant can only be raised by demurrer or answer. If not so raised, it is waived.

Action in the municipal court of Minneapolis in forcible entry and unlawful detainer. The answer was a general denial. The case was tried before Waite, J., who made findings and as conclusion of law found defendant guilty of wrongful detention of the premises and that plaintiffs are entitled to immediate restitution. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*L. A. & A. P. Reed,* for appellant.

*G. W. Lewis,* for respondents.

[1] Reported in 117 N. W. 158.

104 M.—31

ELLIOTT, J.

On April 1, 1902, William J. Godfrey was the owner of a certain addition to the city of Minneapolis, known as "Godfrey's Bridal Veil Block," in which there was a subdivision known as block 1, lot 2, thereof. On that date Godfrey by a parol agreement leased a certain portion of block 1, lot 2, to the appellant, Frey. The term of the lease was from quarter to quarter from and after April 1, 1902, and the lessee agreed to pay a rental of $80 per year, payable quarterly, in advance, on the first days of January, April, July, and October of each year. When the lease was made there were upon the land certain buildings which were owned by Frey, and other buildings were placed on the land by him after he went into possession under this lease. Immediately after the making of the lease said Frey entered into possession of the premises under the lease, and thereafter paid the quarterly rent, according to the terms of the lease, until April 1, 1907. The amount due on April 1, July 1, and October 1, 1907, respectively, has never been paid. On February 6, 1907, Godfrey replatted block 1, lot 2, of Godfrey's Bridal Veil Block, into an addition to the city of Minneapolis, known as "Bridal Veil Falls Addition to Minneapolis," and on the plat donated and dedicated the alley therein to the public use. This plat was duly filed in the office of the register of deeds.

The land leased to Frey and occupied by his buildings was replatted into lots 14, 15, 16, 17, 18, 19, and 20, of block 1, of said Bridal Veil Falls addition, and an alley, fourteen feet in width, fronting on Lennox street. This alley separated lots 19 and 20 from lots 14, 15, 16, 17, and 18. The land leased to Frey did not include the whole of these lots, but only the land on which the buildings stood and ninety feet of the alley. Part of the buildings was also on the land dedicated for an alley. The plat was recorded in February, 1907, and on March 30, 1907, Godfrey and his wife sold and conveyed all of block 1 in Bridal Veil Falls addition to Harry F. Newhall. This deed was duly filed for record on April 12, 1907. April 11, 1907, Newhall and wife conveyed block 1 to James B. Miner, and Miner the same day sold and conveyed lots 14, 15, 16, 17, and 18, of block 1, to James H. Budds. The replatting and all of these transfers were without the consent or acquiescence of Frey. On April 30, 1907, Frey was formally notified of the change of ownership of the premises, and Budds and Miner,

by their agent demanded that' he pay to them the $20 due as rent from April 1, 1907, to July 1, 1907. He refused to pay the rent, but remained in possession of the premises. Thereafter, on June 28, 1907, as found by the trial court, the "plaintiffs served upon defendant a good and valid notice to terminate said lease and remove his buildings therefrom on or before the 30th day of September, 1907."

This demand not being complied with, this action of forcible entry and unlawful detainer was commenced, and the trial court found the defendant guilty of the wrongful detention of the premises and ordered judgment for immediate restitution. The defendant appealed from the judgment, and in this court contends that (1) the notice was bad, because it required the lessee to remove before the end of one of the quarter periods, and because it was a notice to quit only a part of the premises; (2) plaintiff cannot recover possession, because the contract to pay rent has been split; (3) there is a defect of parties, in not joining Godfrey and the city of Minneapolis; and (4) plaintiffs have not shown themselves entitled to any definite or certain amount of rent upon which their cause of action must rest.

1. The action was not based upon the failure or refusal of the tenant to pay rent, but upon the fact that the tenancy had been terminated by the giving of a proper notice to quit. Frey was a tenant at will, and the landlord had the right to terminate the tenancy at any time by giving proper notice. The notice served required him to surrender possession on September 30, and this was a good notice, if that was the last day of the old quarter. Petsch v. Biggs, 31 Minn. 392, 18 N. W. 101. But the appellant contends that, as the lease was from quarter to quarter "from and after April 1, 1902," the first day of the month must be excluded, and that the term ended on October 1, instead of the thirtieth day of September. If this construction of the lease is correct, no proper notice was given. There has been a great deal of discussion and some difference of opinion as to whether the word "from," as applied to time and distance, is to be used as inclusive or exclusive of the terminus a quo. The statutory rule is that, in computing the time within which an act is required or permitted to be done, the first day shall be excluded and the last included, unless the last day shall fall on Sunday or on a holiday, in which case the prescribed time shall be extended so as to include the first business day thereafter. R. L.

1905, § 5514, subd. 21. Manifestly this cannot aid us in determining when a lease commences or terminates.

The result of the authorities seems to be that whether the word "from" shall be construed as inclusive or exclusive depends upon the context or the subject-matter, and particularly upon the expressed intention of the parties. Thus, in Pugh v. Duke of Leeds, 2 Cowp. 714, Lord Mansfield said: "The sense of the word 'from' must always depend upon the context and subject matter, whether it shall be construed inclusive or exclusive of the terminus a quo." When the words "from the date," or "from" a day named, are used in connection with the creation of an estate or the passing of an interest, and the parties have not manifested a contrary intention, the date of the instrument is inclusive, and an immediate interest passes; but, when used in connection with the computation of time, the date, as required by the statute, is exclusive. In Hatter v. Ash, 1 Lord Raym. 84, it was held that the words "from the date," when used to pass an interest, includes the day; aliter, when used by way of computation only in matters of account. The same distinction was recognized and applied in Lysle v. Williams, 15 Serg. & R. (Pa.) 135, and to a certain extent in Taylor v. Brown, 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313; and Id., 5 Dak. 335, 40 N. W. 525, where it was held that, in computing the time during which alienation of public lands acquired by an Indian under the provisions of the United States statute is forbidden, the day of the issue of the patent should be included.

In construing statutes containing such expressions, the court must be governed by the ordinary rule that the legislative intention controls. In Parkinson v. Brandenburg, 35 Minn. 294, 28 N. W. 919, 59 Am. 326, it was held that a provision to the effect that the statute should take effect "from and after its passage" should be so construed as to make the statute go into effect on the day after it was passed; that is, the day of the passage of the act should be excluded. To have included the day would have made the statute retroactive in effect, as a day is in law an indivisible point of time, and such a result could not be presumed to have been within the contemplation of the legislature.

In many of the cases the first day was included or excluded in order to carry out the manifest intention of the parties to the contract. In 1 Taylor, L. & T. (9th Ed.) § 78, the author, after referring to the

conflicting authorities, says: "As the rule is now generally laid down, one terminus will be excluded and the other included, in the computation of time, according to the circumstances and the apparent intention of the parties." Higgins v. Halligan, 46 Ill. 173. In Marys v. Anderson, 2 Grant, Cas. (Pa.) 447, it was held that a lease from April 1, for one year, expired on the 31st day of the following March, and in reaching this conclusion the court took into consideration the fact that "The parties to this transaction doubtless had in view the universal understanding of the country." In Donaldson v. Smith, 1 Ashm. (Pa.) 197, it was held that in a written lease the phrase "from the day of the date," or "from the date," may be construed as inclusive or exclusive, according to the subject-matter or context, and that, if there is no stipulation postponing the commencement of the lease, the day of the demise is to be included. In Taylor v. Brown, 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313, Chief Justice Fuller said that the terminus a quo may be included when necessary to give effect to the obvious intention. If the parties have expressed their intention, their will must be given effect, although the strict rules of grammar are made to suffer.

This contract created an interest in the lessee, and the terminus a quo should be included in the term, unless the contrary intention was expressed by the parties. But it appears with reasonable clearness that the parties intended and understood that the first day of the month should be included; that is, that the general rule as stated should control. The lease was from quarter to quarter "from and after April 1, 1902." The rent was payable on the first days of January, April, July, and October, and this arrangement suggests that the parties supposed that the quarters commenced on the first, instead of the second, day of the month. The lease was made on April 1, the rent was made payable that day, and it is stipulated that the defendant immediately—that is, on April 1—entered into possession of the premises. The reasonable inference is that the term was intended to commence on the first day of April, and therefore, in construing the terms of the lease, the first day of the month should be taken as included.

2. The tenancy was therefore terminated by proper and legal notice, and Frey's right to possession came to an end. After Godfrey filed the plat he deeded the lots to Newhall by reference to the plat, and, as

against his grantees and the public, he was thereafter estopped to question the fact of the dedication of the alley. Poudler v. City of Minneapolis, 103 Minn. 479, 115 N. W. 274. Newhall conveyed certain lots which included a portion of the land occupied by Frey, to the plaintiffs herein, and under such conveyances the grantees acquired the fee to the center of the alley in front of his lots. But when Godfrey filed the plat Frey was in possession of a part of the land under a good and valid lease, and the platting and dedication could not affect his rights. As against him, the public acquired no right to the use of the alley until the termination of his leasehold interest. As between Frey and the owners of the fee, the plat must therefore be entirely disregarded. The platting did not affect Frey prejudicially; neither did it create additional rights in him. It could neither enlarge his right of possession, nor create in him rights which did not exist under his lease. The lease gave him the right to possession until the tenancy was regularly terminated by the service of a proper notice. The action for restitution was commenced by the owners of the fee to all the land involved in the suit, including the fee of the land over which the alley was laid out.

3. If the defendant desired to raise the question that there was a defect of parties, he should have done so by demurrer or answer, and, not having done so at the proper time, he cannot now be heard on that question. Jones v. City of Minneapolis, 31 Minn. 230, 17 N. W. 377; Davis v. Chouteau, 32 Minn. 548, 21 N. W. 748; Moore v. Bevier, 60 Minn. 240, 62 N. W. 281; Stewart v. Great Northern Ry. Co., 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; Jaeger v. Sunde, 70 Minn. 356, 73 N. W. 171; Bell v. Mendenhall, 71 Minn. 331, 73 N. W. 1086; Anderson v. W. J. Dyer & Bro., 94 Minn. 33, 101 N. W. 1061.

The judgment of the trial court is therefore affirmed.