UNITED STATES v. JOYCE et al.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1917.)

No. 4717.

1. INDIANS ⟲⟳14—PATENT TO LANDS—EFFECT—OMISSION OF RESTRICTION.
　　Under Act July 4, 1884, c. 180, 23 Stat. 96 (Comp. St. Ann. 1916, § 4612), providing that patent issued thereunder for homesteads to Indians shall be of the legal effect and declare that the government shall hold the property in trust, the absence of the declaration in the patent does not defeat the trust.

　　[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 2, 31–36, 46.]

2. INDIANS ⟲⟳27(4)—PATENT TO LANDS—LIMITATION OF ACTIONS—SUIT TO ENFORCE RESTRICTION.
　　Act March 3, 1891, c. 561, § 8, 26 Stat. 1099, as amended by Act March 3, 1891, c. 559, 26 Stat. 1093 (Comp. St. 1913, § 4992), requiring suits to vacate and annul patents to be brought within six years after the issuance of the patent, does not apply to a suit by the United States for a decree declaring that defendants, who purchased land patented to an Indian as a homestead, had no estate or interest therein, and that the title of the United States to the land was valid, except as to the rights of the patentee.

3. INDIANS ⟲⟳14—HOMESTEAD ENTRY—LAW GOVERNING—RECITALS IN PROCEEDINGS.
　　Where the original application for homestead entry was headed "Indian," and the application on its face was to enter under Act July 4, 1884, permitting homestead entry by Indians under certain restrictions, the government farmer gave a certificate to the register that the applicant was an Indian, and the receiver issued a receipt referring to the application, and a final receipt containing the words "Indian homestead" immediately after the signature, it was apparent that the entry was made under Act July 4, 1884, amending Act May 20, 1862, c. 75, 12 Stat. 392.

　　[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 2, 31–36, 46.]

⟲⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. INDIANS ☞14—HOMESTEAD ENTRY—RESTRICTIONS—OMISSION FROM PATENT.
    The omission from a patent of a homestead to an Indian of the restrictions imposed by Act July 4, 1884, does not relieve the land from the restrictions, and all persons are charged with notice thereof.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 2, 31–36, 46.]

5. INDIANS ☞27(6)—HOMESTEAD—RESTRICTION ON ALIENATION—BONA FIDE PURCHASER.
    An answer alleging that defendant purchased part of an Indian homestead from the Indian's administrator, without knowledge of the error of the land agents in omitting from the patent the restrictions on the right to convey, is not sufficient to raise the defense that she was a bona fide purchaser, since it does not allege the consideration paid, or that when it was paid it was bona fide, nor does it allege that defendant had no notice that the patentee was an Indian, and that he had paid no fees on making the entry.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit by the United States of America against Nellie N. Joyce and others to have the title to land patented to an Indian declared to be held in trust by the United States. Decree for defendants, and plaintiff appeals. Reversed and remanded, with directions to enter a decree for complainant.

Alfred Jaques, U. S. Atty., of St. Paul, Minn., and Elijah Barton, Asst. U. S. Atty., of Minneapolis, Minn.

Alford & Hunt, of Duluth, Minn., for appellee Joyce, now Coffey.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. John Wakemup, Sr., a Chippewa Indian, a ward of the government and in charge of an Indian agent, on April 16, 1892, entered certain public lands, that is, lands not in any Indian reservation, to wit, lots 4, 5, and 6, in section 21, township 63, range 18, as a homestead, under Act July 4, 1884, 23 Statutes at Large 76, 96, U. S. Compiled Statutes 1916, § 4612, as follows:

"That such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

John Wakemup, Sr., having died, his heirs on November 25, 1903, made final proofs on his entry, and on June 16, 1905, there was issued

to them not the trust patent provided for in the act of July 4, 1884, but an ordinary form of patent of a homestead under the act of May 20, 1862, and acts supplemental thereto. In its bill the government alleges that its officers—

"failed and neglected to embody in said patent the conditions, reservations, and limitations upon the title to be granted as in said act specified, and which they are commanded to incorporate in all patents issued under said acts of Congress; and complainant avers that said officers issued said patent inadvertently, erroneously, wrongfully, and without authority of law, and that the same is void and of no effect, and that the executive officers who issued said patent could not and had not the power to dispense with the provisions of said act of Congress as aforesaid."

The bill further alleges that the defendants Nellie N. Joyce, R. W. Nichols, Edward L. Boyle, and John Helmer, who are none of them heirs of John Wakemup, Sr., each claim an interest in said lands adverse to the United States. The prayer of the bill, which, as will hereafter appear, we think is important, is as follows:

"That your honors may decree that said defendants, and each of them, have no estate or interest whatsoever in or to said lands or premises, and that the title of the complainant is good and valid, save and except any and all rights acquired by the patentees under the aforesaid act of Congress, and that the said defendants, and each of them, be forever enjoined and restrained from asserting any claim whatsoever in and to said lands and premises adverse to the complainant, and for such other and further relief as the equity of the case may require and to your honors may seem meet."

The only defendant contesting the relief sought is Nellie N. Joyce, now Nellie N. Coffey. She filed an answer in which she alleged that subsequent to the death of John Wakemup, Sr., administration was sued out on his estate and after due proceedings the administrator, with the approval of the probate court, deeded lot 4 of the property in controversy to Anna S. Joyce; that the heirs of John Wakemup, Sr., were two sons and one daughter, the last named Elizabeth Otter, and she with her husband conveyed an undivided one-third of all the lands described in the patent referred to Anna S. Joyce; that said Anna S. Joyce and husband executed two mortgages for an aggregate of $475 upon lot 4 in question and other property to Albert Kitto, and that said mortgages are now the property of the defendant; that subsequent to the execution of said mortgages said Anna S. Joyce, who was then a widow, conveyed said lot 4 to the defendant Nellie N. Joyce by quitclaim deed; that the state of Minnesota on the 10th day of June, 1913, issued assignment certificates evidencing the taxes against said lands for the year 1911 to John Helmer, and thereafter said certificates were assigned to Nellie N. Joyce, now Coffey. She further alleged that this action was not commenced within 6 years after the date of the issuance of said patent, and said cause of action accrued more than 6 years prior to the commencement of said action. The case was tried, and the court dismissed the bill of complaint, and the government appeals.

[1] The act of July 4, 1884, provided that all patents issued thereunder "shall be of the legal effect" and "declare" that the government shall hold the property in trust, etc. The mere absence of the re-

quired declaration from the patent does not change the legal effect of the patent; that is to say, if the patent had declared that the United States would hold the property in trust for 25 years, this action could have been maintained by the government. Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Goat v. United States, 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; Bowling v. United States, 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080; United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844; United States v. Allen, 179 Fed. 13, 103 C. C. A. 1; United States v. Gray, 201 Fed. 291, 119 C. C. A. 529. As the act of Congress declared that the patent should be of the "legal effect" that the United States would hold the property in trust, the absence of the declaration to the same effect in the patent would not deprive the United States of the right to maintain the suit.

[2] The defendant pleaded the statute of limitations. The statute relied on reads as follows:

"Sec. 8. That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." 26 Statutes at Large, 1093.

This act was passed March 3, 1891. The patent in question was issued June 16, 1905, more than 4 years thereafter, and 6 years is therefore the limitation applicable; but the chief trouble is that the government does not seek to vacate or annul the patent, as shown by the prayer to this bill which we have set out. It does seek to have a decree that the defendant, now Nellie N. Coffey, has no estate or interest in the lands, and that it be decreed that the title of complainant is good and valid, save all rights acquired by the parties under the act of Congress of July 4, 1884, and that the defendant be enjoined from asserting any claim adverse to the complainant, and for general equitable relief.

True, the United States alleges in its bill that the patent is void and of no effect in so far as it exceeds the patent prescribed by the act of July 4, 1884; but there is no prayer that it be so decreed. It may be conceded that, if this were an action to cancel or annul the patent, the statute of limitations would apply; but it becomes more manifest that this is not an action to cancel or annul the patent when it is recalled that the heirs of John Wakemup, Sr., for aught that appears, are still the owners of an undivided two-thirds of the lands described other than lot 4, and none of them are made parties to this action at all. This cannot be considered as an action to annul and cancel the patent. It is an action rather to construe the patent in accordance with the law under which it was issued. In Pitan v. United States, 241 Fed. 364, —— C. C. A. ——, this court held that this statute did not bar the action to recover damages against a vendee who had obtained title to government land by fraud, and in like manner it does not bar an action to construe a patent and enforce it as construed.

[3] The records of the Land Department in connection with this entry are in evidence and before us. The original application for en-

try of these lands is headed "Indian," and the application on its face is to enter under the act of Congress of July 4, 1884, which refers only to entries by Indians. The government farmer, J. K. McDonald, gave a certificate to Monroe Nichols, the register of the United States land office at Duluth, dated 3 days after the date of the application, that John Wakemup was an Indian, and entitled to an Indian homestead, and entitled to all the benefits to be derived from the Indian Homestead Act. The receiver issued a receipt in lieu of the usual receipt for fees of the register and receiver, in which it was recited that he had:

"Received of John Wakemup, Sr., the sum of No dollars No cents, being the amount of fee and compensation of register and receiver for the entry of lots 4, 5, and 6 of section 21, in township 63 north, of range 18 west 4th P. M., under section No. 2290, Revised Statutes of the United States."

Attached to this was considerable matter under the heading "Indian Homestead, Act July 4, 1884." This receipt also referred to No. 6588, which is the number of Wakemup's application heretofore referred to, in which twice, once in express words and once by necessary implication, Wakemup was referred to as an Indian. The same is true of the homestead affidavit filed by John Wakemup, Sr. The final proof filed by the heirs is headed "Indian Homestead Proof." The final receiver's receipt is for blank dollars and blank cents, being the balance of payment required by law for the entry of lots 4, 5, and 6 in section 21, township 63, range 18, and contains the words "Indian homestead" immediately after the signature. These were all part of the files before the first effort was made to convey the title originally acquired by John Wakemup, Sr., to this defendant or her grantors. It is apparent that the entry, while under the act of May 20, 1862, was under that act as amended July 4, 1884, and was of that "legal effect." The object of calling attention to these facts is clearly to point out that the lands were taken under the act of July 4, 1884, and not simply under the act of May 20, 1862, and not for the purpose of reopening the question determined in United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 67 C. C. A. 1.

[4] Now, let us see, independently of the question of the defendant being a bona fide purchaser, what is the effect of the omission of all reference to the restrictions imposed by the act of July 4, 1884, on the patent. Under the original Homestead Act (12 Statutes at Large, 392) the right to enter a homestead was limited to citizens of the United States, or those who had filed their declaration of intention to become such. Indians were not citizens and could not be naturalized, except by act of Congress. Elk v. Wilkins, 112 U. S. 94, 5 Sup. Ct. 41, 28 L. Ed. 643. And no such authority had been generally granted at the time of the Homestead Act. Consequently an Indian could not originally enter a homestead. On March 3, 1865 (13 Stat. 541, 562, c. 127), certain Wisconsin Indians were given the right to enter land under the homestead law under restrictions. On March 3, 1875 (18 Stats. at Large, 402, 420, c. 131), all Indians who had abandoned their tribal relation were given the benefit of the homestead law, but with restrictions, and by Act Jan. 18, 1881, c. 23, 21 Stat. 315, homestead

entries by Winnebagos of Wisconsin were legalized, but with restrictions. Then came Act July 4, 1884, heretofore quoted.

In Taylor v. Brown, 5 Dak. 335, 40 N. W. 525, it appears that Thomas K. West, a Santee Sioux Indian, entered a homestead under the act of March 3, 1875. The patent issued to West was in the absolute form usually issued under the Homestead Act of May 20, 1862, and made no reference to the fact that West was an Indian, nor to the restrictions imposed by the act of 1875. The court said that the authorities uniformly held that the statutes in force at the time would prevail over recitals of the patent and that parties purchasing of Indians were chargeable with notice of the restrictions of the law. The court in that case cited with approval the learned opinion of Chancellor Kent, speaking for the Court of Errors of the state of New York, reported in Goodell v. Jackson, 20 Johns. (N. Y.) 693, 11 Am. Dec. 351. That authority was in point. This case of Taylor v. Brown, 5 Dak. 335, 40 N. W. 525, was appealed to the Supreme Court of the United States and there affirmed (Taylor v. Brown, 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313); but for aught that appears this question was abandoned in the appellate court by the defendants.

In United States v. Hemmer (D. C.) 195 Fed. 790, 801, in a very able opinion, Elliott, Judge, said:

"Even though the patent in this case had failed to show that Taylor was an Indian, and contained no limitation whatever upon alienation, the act of the executive officers of the United States issuing the patent without condition or limitation (if limitations should have been imposed upon alienation under the then existing provisions of the acts of Congress) could not affect such limitation prescribed by Congress, and the purchasers from Taylor, the Indian, were chargeable with knowledge of the limitations imposed upon his title by the acts of Congress."

That case was appealed to this court and reversed (Hemmer v. United States, 204 Fed. 898, 901, 123 C. C. A. 194, 197); this court saying:

"If, when the conveyances here in question were made and the liens were placed, Taylor's homestead was subject to the restrictions upon alienation and taxation prescribed by the act of July 4, 1884, the decree below was right (Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820), and the question whether or not it was so subject must be determined by the acts of Congress and not by the terms of the patents issued to Taylor."

The case was further appealed to the Supreme Court of the United States (United States v. Hemmer, 241 U. S. 379, 36 Sup. Ct. 659, 60 L. Ed. 1055), but neither in this court nor in the Supreme Court was the portion of the opinion by the District Court cited called in question.

In Eells v. Ross, 64 Fed. 417, 12 C. C. A. 205, in an opinion delivered in behalf of the Circuit Court of Appeals of the Ninth Circuit by McKenna, Circuit Judge, but now for many years Justice of the Supreme Court, the decision in Taylor v. Brown, 5 Dak. 335, 40 N. W. 525, on this question is expressly approved. In Frazee et al. v. Spokane County, 29 Wash. 278, 69 Pac. 779, the case of Taylor v. Brown, 5 Dak. 335, 40 N. W. 525, is expressly approved and followed. In Felix et al. v. Yaksum et al., 77 Wash. 519, 137 Pac. 1037, as in this case, a patent was issued to an Indian without restrictions. The court said:

"Nor is it of any determinative force that the patent contains no restriction against alienation. The law becomes a part of the patent, and no federal official can waive or render inoperative, because of the failure to incorporate it, any limitation which Congress has imposed upon the title."

[5] So far as the answer pleads the assignment to the defendant Nellie N. Coffey of the certificate evidencing the taxes against the lands they were not subject to taxes under the act of July 4, 1884. Frazee v. Spokane County, supra; 19 Op. Atty. Gen. 161. In her answer this defendant said:

"9. That said purchase of said lot numbered four (4) by said Anna S. Joyce from said administrator of said estate of said John Wakemup, Sr., and said sale and conveyance by said Elizabeth Otter and George Otter, her husband, unto the said Anna S. Joyce, and also said purchase by said defendant Nellie N. Joyce, now Coffey, from said Anna S. Joyce, were each and all made without any knowledge whatsoever of any error, oversight, neglect, or mistake whatsoever on the part of the complainant, its executive officers, agents, or any person or persons acting in its behalf, or otherwise; that all of the acts of the said Anna S. Joyce and the defendant Nellie N. Joyce, now Coffey, were made and done in reliance upon said patent as having conveyed said title without qualifications or limitations of any sort, and each and all of the acts of said Anna S. Joyce and Nellie N. Joyce, now Coffey, were made and done in good faith."

It will be observed that the authorities hold that the defendant Mrs. Coffey, and her grantors, were charged with notice of the restrictions upon alienation; but, even if she were not, the question next arising would be, first, has she pleaded that she was a bona fide purchaser without notice; and, second, has she succeeded in making proof of such allegation? In speaking of the defense of a bona fide purchase, the Supreme Court in Wright-Blodgett Co. v. United States, 236 U. S. 397, 403, 35 Sup. Ct. 339, 341 [59 L. Ed. 637], said:

"But this is an affirmative defense, which the grantee must establish in order to defeat the government's right to the cancellation of the conveyance which fraud alone is shown to have induced. The rule as to this defense is thus stated in Boone v. Chiles, 10 Pet. 177, 211, 212 [9 L. Ed. 388]: 'In setting it up by plea or answer, it must state the deed of purchase, the date, parties, and contents briefly; that the vendor was seised in fee, and in possession; the consideration must be stated. with a distinct averment that it was bona fide and truly paid, independently of the recital in the deed. Notice must be denied previous to, and down to the time of, paying the money, and the delivery of the deed; and if notice is specially charged, the denial must be of all circumstances referred to, from which notice can be inferred; and the answer or plea show how the grantor acquired title. * * * The title purchased must be apparently perfect, good at law, a vested estate in fee simple. * * * It must be by a regular conveyance; for the purchaser of an equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. * * * Such is the case which must be stated to give a defendant the benefit of an answer or plea of an innocent purchase without notice; the case stated must be made out; evidence will not be permitted to be given of any other matter not set out.'"

Substantially the same rule was announced by this court in Northern Colorado Coal Co. v. United States, 234 Fed. 34, 148 C. C. A. 50. It will be observed there is no allegation of the consideration paid, or when the payment was made, much less that it was bona fide or duly paid. There is no allegation that the vendee had no notice that the patentee was an Indian and that he had paid no fees to the government

on making said entry. We conclude that there is no sufficient allegation that any of the grantees in these deeds were bona fide purchasers.

If we turn to the evidence we find that the allegation as made is wholly unsustained thereby. We therefore hold, first, that the various vendees of the lands were all charged with notice of the restrictions; second, that there is no allegation that any of these vendees were bona fide purchasers; and, third, there is no evidence to sustain the claim even if it had been alleged.

It follows that the decree of the District Court is reversed, and the cause is remanded, with directions to enter a new decree for the United States as prayed.