JOHN WOLLMER, APPELLEE, V. JAMES WOOD ET AL.: THEODORE JOHNSON ET AL., APPELLANTS: ROY B. CARLBERG, CROSS-PETITIONER AND APPELLEE.

FILED JANUARY 8, 1930. No. 26776.

*Stason & Knoepfler,* for appellants.

*Saxton & Hammes,* for appellee Wollmer.

*Roy B. Carlberg, pro se.*

Heard before ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

EBERLY, J.

Appellee, plaintiff in the court below, instituted action to secure the foreclosure of a certain real estate mortgage and the sale of certain real estate described therein situated in Thurston county, Nebraska, against the defendants who are the appellants here, and with them impleaded James Wood and Susan S. Wood. This petition of appellee contains allegations common to foreclosure proceedings and also certain statements setting forth that the defendant Theodore Johnson claimed to own the premises described

by reason of certain proceedings based upon a judgment entered in the district court for Thurston county, Nebraska, on November 4, 1920, in favor of Theodore Johnson and against the defendants James Wood and Susan S. Wood upon an obligation which was incurred by the latter at and prior to the 12th day of September, 1919; that James Wood and his wife were Omaha Indians, and that the land in controversy at the time Wood became possessed of the title was not subject to the lien of the Johnson judgment, nor subject to be sold thereunder, and that the proceedings so far as the levy and sale were concerned, upon which Johnson's rights to the premises were based, were in truth and in fact void. The appellants here, defendants in the district court, admit the execution of the mortgages in suit; and the due rendition of the judgment of the defendant Johnson is not denied by any of the parties. The defendant Roy B. Carlberg is likewise the owner of a note and mortgage covering the same land executed by Wood and wife, the priority of which is junior to that of appellee Wollmer. This mortgage was set up by a cross-petition and the questions presented by this pleading are identical with those presented by the pleadings of Wollmer, and a like judgment was entered.

The real issue in the case is the right of Johnson to levy his judgment on and satisfy the same out of the lands described in appellees' mortgages. There was a trial of the issues to the district court for Thurston county which found in favor of the appellees, adjudged the lands exempt from the lien of appellants' judgment, and that the title based upon such levy and sale to the premises upon which appellants predicated their defense was therefore void, and decree of foreclosure and sale was entered in favor of the appellees as prayed. From this adjudication defendants, Theodore Johnson, Clara E. Johnson, and H. L. Drenguis, have appealed.

The uncontradicted evidence in the record discloses that David and Daabe Preston were Omaha Indians, and sustained to each other the relation of husband and wife. Each was an allottee of the government under the act of

1882 allotting lands to Omaha Indians, and both were past eighty years of age. They desired to secure a distribution of their real estate. For this purpose David Preston executed a will devising the allotments received by him. Contemporaneous with this in disposing of her allotment, Daabe Preston, together with David Preston, her husband, executed a deed which conveyed to their grandson, James Wood, the following described premises situated in Thurston county, Nebraska: Southwest quarter of the northeast quarter of section 30, township 25, north of range 9, east of the sixth principal meridian. This instrument, termed "Deed Noncompetent Indian Land," bears date March 31, 1917. However, there was no delivery of this conveyance made at that time, nor did the representatives of the federal government approve its terms until the 4th day of February, 1921. On that day this conveyance was approved by John Barton Payne, secretary of the interior.

It is further disclosed by the record that James Wood became indebted to Theodore Johnson in the sum of $2,500 on or prior to September 12, 1919. On that date this indebtedness was merged into a promissory note which Wood and wife then made and delivered to Johnson. Judgment was duly entered in the district court for Thurston county on this note November 4, 1920, for the sum of $2,785 with interest at 10 per cent. and costs of suit taxed at $17.75. The conveyance of the land in suit made by Preston and wife to James Wood, and which was approved on the 4th day of February, 1921, was recorded as provided by law in the land office in Washington, D. C., on the day of its approval, and recorded in Thurston county, Nebraska, on the 15th day of October, 1921. Appellee's note and mortgage were duly executed and delivered by James Wood and Susan S. Wood, his wife, and this mortgage was duly recorded in Thurston county on the 23d day of November, 1921. Thereafter an execution was issued on the Johnson judgment and was levied on the land described in the mortgage on the 29th day of March, 1923. In due time this land was sold under said levy to Johnson and the sale thereof duly confirmed by the district court for Thurston

county. This levy and sale the district court for Thurston county, in this proceeding, adjudged was void and conveyed no title to Johnson for the reason that the lands upon which the levy was made were "Indian lands" and not subject to the lien of the Johnson judgment because of the provisions of the federal law pertaining thereto.

On this record the appellants now present two propositions, viz.: First. Because of certain proceedings had in the district court for Thurston county, Nebraska, which ripened into the confirmation of the execution sale herein referred to, the appellees are bound by the decree of confirmation and especially by the finding therein "that said premises at the time of the levy and execution were the property of the defendant James Wood and subject to such levy on execution and sale." Second. That, even though this contention be denied, still the land in question was subject to the lien of appellants' judgment at the time of the levy and sale, and that the title of appellants based thereon is superior to the lien of appellees' mortgages.

The question first presented is essentially one of practice under the Nebraska Code. It may be conceded that it was the right of appellants, in view of the conditions which obtained at the time of the issuance and levy of the execution on their judgment upon the land in question, to have had all conflicting claims to the premises determined so that any purchaser at the sale would have been fully advised as to what was secured to him by his purchase. Under the practice which prevails in this jurisdiction this result would have been obtained by the issuance, service and return of the execution *nulla bona,* and the filing of a petition in the nature of a creditor's bill to which all persons in interest would be made parties setting forth the facts and tendering issues thereon. This would have secured to each person in interest his day in court with an opportunity to meet the claims of the plaintiffs and present their defenses thereto. *First Nat. Bank of Plattsmouth v. Gibson,* 60 Neb. 767. It is plain, however, that this course was not followed. Instead thereof the appellants desire to obtain the fruits of action which does not appear to have

been authorized either by the terms of our statute or by the established practice of our courts. Indeed the statute relative to the confirmation of judicial sales has no requirement as to notice being served on the judgment debtors or parties in interest in the suit, and the only requirement of notice in such cases pertains to confirmation had· at chambers. It appears that the sale now under consideration was confirmed on one of the days of a regular term of court. And it may be further said that, in the regular course of judicial procedure, the only matter settled and adjudicated in the proceedings and order of confirmation of a judicial sale is that as to the proceedings of the sheriff and those acting under and with him in the levy, appraisement, advertising, making and returning of the sale. The questions as to the exempt character of the lands levied upon are not proper to present before the district court in considering objections to confirmation of the judicial sales of real estate. This court has held that at chambers a judge may confirm judicial sales, and this determination is hardly consistent with the idea that at such hearing there may be an adjudication of rights ordinarily determinable only by courts in the exercise of their regular jurisdiction as such. *Schribar v. Platt,* 19 Neb. 625; *Best v. Zutavern,* 53 Neb. 619; *Best v. Grist,* 1 Neb. (Unof.) 812; *Kaley v. Eselin,* 108 Neb. 544. In *Kaley v. Eselin, supra,* this court held:

"The homestead right of exemption of real property under the laws of this state is not a proper subject for consideration upon proceedings for the confirmation of a sale of the alleged homestead on execution.

"The motion to confirm a sheriff's sale cannot be resisted on the ground that the land sold is the homestead of the judgment debtor; and an attempt to resist it on that ground will not bar a subsequent action to remove the cloud caused by such sheriff's deed."

This principle is applicable to the situation before us and is controlling. It follows that none of the parties to this confirmation proceeding are prevented thereby from establishing the true nature of the lands, which are the sub-

ject of this action, in a subsequent proper proceeding to determine their real character as to whether subject to levy or not. Appellants' first proposition must therefore be resolved against them.

The controlling question is presented by appellants' second contention, which is that when the title was vested in James Wood it became subject to the lien of appellants' judgment at a time which made appellants' judgment senior and superior to appellees' mortgages. The federal statute which furnishes the source of this title is the act of 1882, 22 St. at Large, ch. 434, p. 341. This act, we take judicial notice, was continued in full force and effect by executive proclamations and was in full force at the time of the transactions detailed in this record, except as to amendments thereto properly made by congress. In this connection appellees contend that it was amended by the act of May 8, 1906, 34 St. at Large, pt. 1, ch. 2348, p. 182, of which the applicable provisions are the following:

"The secretary of the interior may, in his discretion, and he is hereby authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to the sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent."

In addition to this it appears that a subsequent act of congress, passed March 1, 1907, 34 St. at Large, pt. 1, ch. 2285, p. 1018, is as follows:

"That any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under any law or treaty, or who may have an interest in any allotment by inheritance, may sell or convey all or any part of such allotment or such inherited interest on such terms and conditions and under such rules and regulations as the secretary of the interior may prescribe, and the proceeds derived therefrom shall be used for the benefit of the allottee or heir so dis-

posing of his land or interest, under the supervision of the commissioner of Indian affairs; and any conveyance made hereunder and approved by the secretary of the interior shall convey full title to the land or interest so sold, the same as if fee simple patent had been issued to the allottee."

It is the contention of the appellants that the matters in suit herein are determined by the provisions of the act of 1907, while the appellees rely upon the act of 1906 to sustain their position.

As a necessary rule of construction it may also be said: "From the time of *Worcester v. Georgia,* 6 Pet. (U. S.) *515, *582, down to *United States v. Celestine,* 215 U. S. 278, it has been the rule of all courts to construe doubtful legislation in favor of the Indian." *Rider v. LaClair,* 77 Wash. 488.

It is also undoubtedly true that the source of all powers exercisable by the general government is the legislation duly enacted by the legislative branch thereof. The executive agencies may exercise only the powers thus created and vested in them, including such as may be necessarily implied. The warrant of authority, however, is to be found in the express terms of the statutes, which they must comply with and of which the world must take notice in dealing with these subjects of legislation. Thus it has been declared: "It is the intention expressed in a statute, and that alone, to which the courts may lawfully give effect. They may not assume or presume purposes and intentions that the terms of the statute do not indicate and then enact or expunge provisions to accomplish these supposed intentions." *Brun v. Mann,* 151 Fed. 145, 157. In the case of *United States v. Hemmer,* 195 Fed. 790, 801, it was held: "Even though the patent in this case had failed to show that Taylor was an Indian, and contained no limitation whatever upon alienation, the act of the executive officers of the United States issuing the patent without condition or limitation (if limitations should have been imposed upon alienation under the then existing provisions of the acts of congress) could not affect such limitation prescribed by

congress, and the purchasers from Taylor, the Indian, were chargeable with knowledge of the limitations imposed upon his title by the acts of congress. *Taylor v. Brown,* 5 Dak. 335, Id., 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313; *Eells v. Ross,* 64 Fed. 417, 12 C. C. A. 205. The rule of *caveat emptor* applies to these defendants taking this contract, assignment of the contract, judgment, and tax liens. They are charged with notice, not only of all the facts appearing on the face of the patent, but were also bound by actual as well as constructive knowledge and notice of any defect or mistake in the patent, which was obvious or which might have been known by proper diligence. *Wissler v. Craig's Adm'r,* 80 Va. 22; *Burwell's Adm'rs v. Fauber,* 62 Va. 446; *Tilley v. Bridges,* 105 Ill. 336."

And without further discussion, it may be said that both parties to the litigation agree that the restrictions attempted to be imposed by the secretary of the interior in the approval of this conveyance to Wood are unauthorized by the terms of the statutes applicable and are wholly void.

But it is insisted on the part of the appellees that the following provision of the act of 1906 precludes the attachment of the lien of appellants' judgment to the land in controversy and prevents sale thereunder, viz., "And said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent."

It would seem, however, that when the three acts of congress referred to herein are construed as being *in pari materia* some force and effect must be given to the legislation of 1907. This is at least the last expression of the legislative will. True, the act of 1906 provides: "Said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent." But it will be noted that this exemption is limited to the taker under the final patent which, it was contemplated, would terminate the trust period and vest in the allottee or in the allottee's heir a full and complete title relieved of all restrictions. There was a similar provision applicable to homestead titles granted by the government under the act of May 20, 1862, entitled "An act to secure homesteads

to actual settlers on the public domain." Section 4 of said act (U. S. Rev. St. sec. 2296) declares: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." This language we construed to be in legal effect that, "Although lands acquired as a government homestead are forever exempt from liability for the debts of the patentee created before the patent was issued, such lands in the hands of a subsequent owner are not exempt by the federal homestead law from the payment of the debts of the latter incurred prior to the issuance of the patent." *Duell v. Potter,* 51 Neb. 241.

True, under the terms of the Omaha allotting act of 1882 the issuance of a patent in fee simple by the government is expressly made a condition to the termination of the restrictions imposed by that act. Even so, after receipt of final patent it is plain that the patentee had unlimited right to sell and transfer and, while the fee simple title remained in him, it was exempt from all indebtedness by him previously incurred. But, notwithstanding these provisions, the legislative will, as expressed in the act of 1907, was that additional powers should be conferred which are enumerated in the act, and, as a part thereof, further declares as a result of the exercise of the additional powers so conferred that "any conveyance made hereunder and approved by the secretary of the interior shall convey full title to the land or interest so sold, the same as if fee simple patent had been issued to the allottee."

Applying this language to the situation disclosed in the present case: It is thought that the terms of the act of 1907 fairly disclose the legislative intent that a conveyance by an allottee, who had prior thereto received his final patent, vested in the transferee a full and complete title forever exempt from liability for the debts of the patentee created before the patent was issued. But this exemption extended no further. The lands in the hands of the transferee were subject to his indebtedness without reference to the date of its creation. So the approval by the secre-

tary of the interior of the "Deed Noncompetent Indian Land" of such allottee, in legal effect, vested in the grantee of such deed a full and complete title relieved of all indebtedness of the grantor incurred by him prior to such approval; and likewise vested in the grantee named a full and complete title without restrictions as to alienation and without federal exemption as to such grantee's debts. Under the terms of the statute, whether the title be taken under such approved deed by a white citizen or by a red can make no difference. The controlling words vested in the grantee the same title, irrespective of blood or condition, and do not create or continue in the grantee any right of exemption personal to him whatsoever. Under these circumstances the rule applicable to appellants' judgment was announced by this court in *Lessert & Steele v. Sieberling & Co.*, 59 Neb. 309, as follows: "Real property, purchased by a judgment debtor subsequent to the rendition of judgment against him, is subject to the lien of such judgment as soon as the title vests in the debtor. Purchasers from such judgment debtor, who have actual or constructive notice of the lien, take the property charged with the lien."

This necessitates the conclusion that on the 4th day of February, 1921, the date of the approval by the secretary of the interior of the "Deed Noncompetent Indian Land" and the delivery thereof, a full, complete and perfect title was vested in James Wood which was subject to the lien of any existing judgment against him irrespective of the date of its entry or the date of the creation of the indebtedness upon which it was based. It therefore follows that the title vested in the appellants by the sale under their judgment lien was the full, complete and perfect title of James Wood, the lien of appellees' mortgages being subject to the lien of appellants' judgment. The execution sale thereunder vested in the appellants, purchasers thereat, the full, complete and perfect title to the premises wholly relieved of the lien of the mortgages in suit.

The action of the district court in the premises is erroneous and the judgment is reversed and the cause re-

manded, with directions to the district court to enter a decree in harmony with this opinion quieting the title in the appellants as prayed for in their answers.

REVERSED.